OPINION OF THE COURT
Favxola A. Soto, J.
This is a personal injury claim brought by Thomas Riccobono (hereinafter claimant)[2] alleging that the State was negligent in inspecting and maintaining a section of Grand Central Parkway as of January 25, 2014, the date of his accident. {See State’s aff in support, exhibit B, ¶ 9.) On that day, claimant was driving his car when a large piece of concrete fell from the *739 underside of the 168th Street overpass and crashed into his windshield. {Id. ¶ 10.)
The State brought a third-party action against Stantec Consulting Services, Inc. and Zurich American Insurance Company demanding that they defend and indemnify the State. {See State’s aff in support, exhibit J.) The State now moves pursuant to Court of Claims Act § 9 and CPLR 3001 for declaratory judgment finding that Zurich is obligated to defend and indemnify the State for the acts complained of in the claim. Zurich cross-moves to dismiss the third-party action pursuant to CPLR 3211[3] or, in the alternative, to sever it pursuant to CPLR 603 and 1010.
Facts
Stantec’s Contract for Engineering Services
Highway Law § 232 (2) requires that all publicly owned, operated, and maintained bridges be inspected every two years. To comply with its obligations under the Highway Law the State entered into a contract with Stantec titled “Biennial & Interim Bridge Inspection, 2011-2012, Queens County, Region 11” (hereinafter the contract). {See State’s aff in support, exhibit E.) The purpose of the contract was for Stantec to inspect approximately 500 bridges in Queens County over a two-year span running from 2011 to 2012. The contract included inspecting the 168th Street overpass at the Grand Central Parkway, which is owned by the State.
Article 8 of the contract, titled “Consulting Liability,” required Stantec to defend and indemnify the State for any tort claims resulting from its work. {Id.) It also states that Stantec is required to indemnify the State for errors or omissions in its work. {Id.)
Additionally, article 8 required Stantec to purchase “Professional Liability Insurance” to cover damages for any “negligent act, error, or omission in the rendering of or failure to render professional services” described in the contract provided that the contract was for work valued at five million dollars or more. {Id.) Article 8 called for extended coverage for professional liability insurance to cover incidents during the two years of the contract and extending to six years after the work was completed. {Id.)
*740 In article 9, titled “Worker’s Compensation and Liability Insurance,” the contract required Stantec to purchase liability insurance naming the State as an additional insured and to provide the State with a certificate of insurance as proof of coverage. (Id.) Article 9 states that insurance must cover accidents involving bodily injury or death arising from Stantec’s work provided that the accident occurs during the policy period. (Id. at art 9 [b].) However, the contract does not specify how long the policy period must extend. Article 9 also required Stantec to purchase protective liability insurance to cover the State’s omissions or supervisory acts. (Id. at art 9 [b] [4].)
Zurich’s General Commercial Liability Policy
Stantec took out a general commercial liability insurance policy with Zurich (hereinafter the policy). (See Zurich’s aff in support, exhibit 6.) This is the only insurance policy that Stan-tec took out in response to the contract that the court is aware of. The policy obligated Zurich to pay out money damages for covered incidents and to defend insured parties from lawsuits seeking damages up to the monetary limits of the policy. (Id. § 1, Coverages.) The policy insures “any person or organization” who Stantec is obligated to add as an additional insured pursuant to a written contract. (Id. at Endorsement, U-GL-1175-C CW.)
The coverage period ran from May 1, 2011 to May 1, 2012 and only covered “occurrences” resulting in bodily injuries that fell within this time frame. (Id. at Common Policy Declarations, U-GU-D-310-A.) The policy defines “occurrences” as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” (Id. § 5, Definitions.)
The policy covered bodily injuries caused by acts or omissions resulting from work performed pursuant to a written agreement. Notably, the policy specifically excludes bodily injuries arising out of engineering services including conducting inspections and preparing reports. (Id. at Exclusion, CG 22 43 07 98.)
The Impleader
The State alleges that Mr. Riccobono’s claim against it for negligent inspection and maintenance of the 168th Street overpass and Grand Central Parkway arises from Stantec’s defective work as its bridge inspector. (See State’s aff in support, exhibit J, ¶ 27.) Pursuant to the contract, Stantec inspected the accident location on February 7, 2012, nearly two *741 years before the accident. Stantec then submitted a report (hereinafter the 2012 Stantec Inspection Report) to the State with its conclusions that the condition of the overpass was “fair.” (See State’s aff in support, exhibit G.)
During discovery the State produced Mr. John Wong, a Regional Structures Management Engineer working for the State Department of Transportation (hereinafter DOT) who was responsible for supervising contractors, such as Stantec. (See State’s aff in support, exhibit D, Wong tr.) At his deposition, Mr. Wong attested that the 2012 Stantec Inspection Report indicated that there were “no safety issues marked” by Stantec’s inspectors that required repair by DOT. (Id. at 29-30, lines 19-23; at 32-33, lines 18-3.) Since the 2012 Stantec Inspection Report did not trigger any follow-up maintenance and repair work, the State contends that it was not made aware of any defective condition at the 168th Street overpass and, therefore, did not perform any repairs. In short, the State alleges that it relied on Stantec’s inspection, which it alleges turned out to be negligent. Stantec’s inspection led to the State’s decision not to repair the overpass and, therefore, Stan-tec created the circumstances that led to concrete falling from the overpass onto Mr. Riccobono some two years later. The State argues that to the extent that the inspection was faulty, Stantec should be held vicariously liable for Mr. Riccobono’s claimed damages.
In its third-party claim, the State alleges that Stantec’s faulty inspection was “performed during the course and within the scope of the insurance policies procured by Stantec from Zurich.” (State’s aff in support, exhibit J, ¶ 28.) The State’s sole cause of action alleges that Zurich is obligated to defend and indemnify the State against Mr. Riccobono’s claim under the policy, but if it does not, then Stantec should be directed to defend and indemnify the State pursuant to the contract. (See State’s aff in support, exhibit J, concluding ¶¶ 1-2.)
Analysis
The motion and cross motion seek a declaration only on the issue of contractual indemnification. The central dispute that the State and Zurich raise in their respective motions is whether Zurich must defend and indemnify the State against Mr. Riccobono’s claim based on the obligations contained in the contract and the policy. The court declares that it does not.
*742 The State is an additional insured under the policy.
Zurich raises the threshold issue of whether the State is even an additional insured worthy of indemnity. Generally, the party claiming insurance coverage bears the burden of proving entitlement. (See Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 218 [2002].) The “well-understood meaning” of “additional insured” is “an entity enjoying the same protection as the named insured.” (Pecker Iron Works of N.Y. v Traveler’s Ins. Co., 99 NY2d 391, 393 [2003] [internal quotation marks omitted].) “[A] party is not entitled to coverage if it is not named as an insured or additional insured on the face of the policy as of the date of the accident for which coverage is sought.” (New York State Thruway Auth. v Ketco, Inc., 119 AD3d 659, 661 [2d Dept 2014].) However, courts must determine whether a party is an additional insured “from the intention of the parties to the policy, as determined from the four corners of the policy itself.” (140 Broadway Prop. v Schindler El. Co., 73 AD3d 717, 718 [2d Dept 2010] [internal quotation marks and citations omitted].)
Zurich argues that the State is not an additional insured under the policy, so the State is not entitled to the benefits of an insured. It contends that the contract does not require Stan-tec to add the State as an additional insured. However, Zurich overlooks key portions of the contract and its own policy.
Article 9 of the contract states that “[Stantec] agrees to procure and maintain . . . insurance . . . covering all operations under this Agreement . . . .” (See State’s aff in support, exhibit E.) Article 9 also required Stantec to give the State a certificate of insurance showing that it has complied with the insurance requirement. Additionally, the policy was amended to define an additional insured to include “any person or organization who you[4] are required to add as an additional insured on this policy under a written contract or written agreement.” (See Zurich’s aff in support, exhibit 6 at Endorsement, U-GL-1175-C CW.) When article 9 of the contract and the definition of “additional insured” in the policy are read together, it is clear that the intention of the parties was to designate the State as an insured pursuant to its written agreement with Stantec. Furthermore, the certificate of insurance given to the *743 State clearly lists the DOT as an additional insured.[5] (See State’s aff in support, exhibit F.) The certificate explicitly states that “the subscribing insurance company[6] . . . certifies that insurance of the kinds and types and for limits of liability herein stated, covering the work described in the underlying contract herein identified [as the contract], has been procured and furnished on behalf of the insured . . . (Id. )
Therefore, as a threshold matter, the court finds that the State is an additional insured covered by the policy. The court now considers (1) whether Stantec’s alleged negligence is the type of act covered by the policy, and (2) whether Stantec’s alleged negligence occurred during the policy’s coverage period.
Zurich does not owe the State a duty to defend nor indemnify Stantec.
Under New York law, an insurer’s duty to defend, which is “exceedingly broad” (Colon v Aetna Life & Cas. Ins. Co., 66 NY2d 6, 8 [1985]), is triggered whenever the four corners of a complaint, liberally construed, suggest a reasonable possibility of coverage, or when the insurance carrier has actual knowledge of facts establishing such a reasonable possibility (see Frontier Insulation Contrs. v Merchants Mut. Ins. Co., 91 NY2d 169, 175 [1997]). The insurance carrier may be relieved of its duty to defend only if it can establish as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured, or by proving that the claim falls within a policy exclusion (id.). For denials based on claimed policy exclusions, the insurance carrier
“bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.” (Id.)
If any claim arguably arises from a covered event, the insurance carrier must defend the entire action, and assumes the *744 risk and the consequences of making its own decision as to what is alleged or what might be proved against its insured. (Id.) Any doubt as to whether the allegations state a claim covered by the policy must be resolved in favor of the insured. (See Suburban Bindery Equip. Corp. v Boston Old Colony Ins. Co., 150 AD2d 767 [2d Dept 1989].)
While an insurer’s duty to defend its insured is determined by the allegations of the complaint, the duty to indemnify is determined by the actual basis for the insured’s liability to a third person. (See Servidone Constr. Corp. v Security Ins. Co. of Hartford, 64 NY2d 419, 424 [1985].) By contrast to the duty to defend, the duty to indemnify first requires a determination of liability. (See Greenwich Ins. Co. v City of New York, 122 AD3d 470, 471 [1st Dept 2014].)
I. Stantec’s alleged negligent inspection is not covered by Zurich’s policy.
The State argues that the services Stantec provided pursuant to the contract are covered acts under the policy because it provides general liability coverage in connection with biennial inspections of the State’s bridges. Zurich, on the other hand, contends that these inspection services are specifically excluded by the plain terms of the policy.
The policy’s description of coverage includes the following provision:
“D. The insurance provided to the additional insured person or organization does not apply to: [b]odily injury . . . arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:
“1. The preparing, approving or failing to prepare or approve maps, shop drawing, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
“2. Supervisory, inspection, architectural or engineering activities.” (See Zurich’s aff in support, exhibit 6 at Endorsement, U-GL-1175-C CW [internal quotation marks omitted and emphasis added]; see also id. at Exclusion, CG 22 43 07 98.)
Similarly, the policy’s definition of an “insured contract” includes the following provision:
“f. That part of any other contract or agreement pertaining to your business[7] (including an indemnification of a municipality in connection with work *745 performed for a municipality) under which you[8] assume the tort liability of another party to pay for bodily injury . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
“Paragraph f. does not include that part of any contract or agreement: . . .
“2. That indemnifies an architect, engineer, or surveyor for injury or damage arising out of:
“(a) Preparing, approving or failing to prepare or approve maps, shop drawing, opinions, reports, surveys, field orders, change orders or drawings and specifications . . . .” (Internal quotation marks omitted and emphasis added.)
These policy exclusions are clear and unambiguous and squarely encompass the State’s third-party claims. When these exclusions are considered in context of the work Stantec’s engineers were doing at the overpass, it leads to only one plausible conclusion: that the inspection work Stantec performed at the overpass pursuant to the contract were engineering services that involved inspection and preparing reports containing Stantec’s opinions on whether there were structural safety problems. Indeed, the State’s own engineer’s testimony supports this conclusion. According to Mr. Wong, Stantec’s inspection involved a visual inspection but also a hands-on inspection, which, for example, involved using a hammer as part of a sound test to figure out if the structure was secure or in disrepair. (See State’s aff in support, exhibit D, at 12-13, lines 23-1; at 15, lines 15-23; at 19, lines 8-19.) Thus, Stantec’s work involved engineering acumen beyond the normal powers of observation. (Cf. Reliance Ins. Co. v National Union Fire Ins. Co. of Pittsburgh, Pa., 262 AD2d 64, 65 [1st Dept 1999] [contractor whose work at a construction site involving inspecting for compliance with contract terms and safety laws was not covered by a professional services liability policy because the work did not require engineering acumen, but “normal powers of supervision and observation”].)
While the court acknowledges that this interpretation effectively precludes coverage for Stantec’s primary engineering services and begs the question, “what is actually covered by the policy if not Stantec’s work product?,” the policy is never *746 theless not illusory. The Court of Appeals recently held that “[a]n insurance policy is not illusory if it provides coverage for some acts [subject to] a potentially wide exclusion” even though it appears that the result would allow the exclusion to “swallow the policy.” (Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co., 28 NY3d 675, 685 [2017] [internal quotation marks and citations omitted].) Here, it would be reasonable to interpret the policy to cover negligent acts involving, for example, motor vehicle accidents or Labor Law claims that occur while Stantec engineers are performing inspections. Indeed, Mr. Riccobono’s accident may, hypothetically speaking, be within the ambit of the policy if, say, the concrete fell on his car while Stantec’s engineers were actively inspecting the concrete at the overpass.
Additionally, for what it’s worth, the certificate that the State attaches to its motion indicates that professional liability insurance was not covered by the policy. {See State’s aff in support, exhibit F.) Thus, the State has offered no evidence indicating that the professional engineering services that it claims were negligently performed by Stantec are covered under Zurich’s policy.
II. Stantec’s alleged negligent act did not occur during the policy period.
The State argues that Stantec and Zurich were both aware that the inspections called for in the contract were meant to apprise the State of the condition of the overpass at the time of the 2012 inspection up to the next scheduled inspection in 2014. Thus, any accidents causally linked to Stantec’s negligent inspection must be covered by the policy. The crux of the State’s argument is that the negligent inspection occurred in 2012 during the policy period, even though the accident that showed that the inspection was negligent occurred in 2014, after the policy expired. Thus, the State interprets an “occurrence,” not as an accident as it is defined in the policy, but as a negligent act that leads to the accident, no matter how far removed from the negligent act. This argument, while intuitive, fails under closer scrutiny.
Zurich, by contrast, contends that the policy only covers accidents that occur within the policy period, i.e., May 1, 2011 to May 1, 2012. Therefore, the policy does not cover Mr. Riccobo-no’s bodily injuries because his accident occurred nearly two years outside the coverage period (on Jan. 25, 2014).
The court adopts Zurich’s position for several reasons. First, the State’s interpretation would make ambiguous an otherwise *747 clear policy term (the defined coverage period). According to the Court of Appeals’ recent holding in Matter of Viking Pump, Inc. (27 NY3d 244, 257-258 [2016]), a contract is not ambiguous “if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.” Second, Zurich would be forced to cover accidents that occur years after the policy period, which is contrary to the intent of the parties. As with interpreting other provisions in an insurance contract, the parties’ intent plays an important role when it comes to resolving disputes in the meaning of a policy term. (See 140 Broadway Prop., 73 AD3d at 718.) Third, the State’s argument wrongly assumes that the policy covers Stantec’s professional engineering services. Thus, it is of no moment that the State may have contracted with Stantec (who in turn purchased a Zurich policy) to perform inspections in 2014, the year of Mr. Riccobono’s accident, since the 2014 general liability policy also does not cover professional engineering services. Had Stantec purchased professional liability insurance to cover incidents stemming from negligent engineering services that occurred during the two years of the contract and extending to six years after the work was completed as they were required to do under article 8 of the contract, the State would be in an altogether different position. (See State’s aff in support, exhibit E.)
Since the policy does not cover the engineering services complained of in the third-party claim and did not cover Mr. Riccobono’s accident because it occurred after the policy expired, the court declares that Zurich does not have a duty to defend the State against Mr. Riccobono’s claim.
Additionally, since the duty to indemnify follows from the duty to defend, to the extent that the State seeks a declaration that Zurich has a duty to indemnify, that request is denied because the court finds that Zurich does not have a duty to defend. In either event, a declaration regarding indemnification is premature at this point since there are questions of fact regarding Stantec’s liability that were not settled by the State’s motion.[9] (See Chunn v New York City Hous. Auth., 55 AD3d 437, 438 [1st Dept 2008] [“While the duty to defend is clear, issues of fact as to liability in the underlying personal injury action render premature the conclusion that the insurers have a *748 duty to indemnify (the additional insured)”].) For example, claimant served a bill of particulars dated October 8, 2015 alleging that the State had “actual notice by means of an ongoing Biennial/Interim Bridge Inspection performed by Stantec Consulting Services, Inc., which specifically ‘safety flagged’ the subject bridge for hazardous brickwork which posed a safety hazard on or about May 18, 2009.” (See State’s aff in support, exhibit B.) Thus, assuming for now that the allegation in the bill of particulars is true, the State’s papers leave open the issue of whether the State had notice of the alleged defect that resulted in the accident from a prior Stantec inspection and whether the State ever did anything to repair such defects. Accordingly, the court declares that Zurich does not have a duty to indemnify the State in this action.
Stantec’s Liability
Putting the allegations against Zurich aside, the State also alleged in its third-party claim that Stantec must defend and indemnify it pursuant to the “Consulting Liability” provision of the contract. (See State’s aff in support, exhibit J, ¶ 33.) Even if the State did not have a contractual indemnification claim against Stantec, it may well have a viable vicarious liability claim under New York’s common-law indemnification doctrine. Common-law indemnification is generally available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer. (See McCarthy v Turner Constr., Inc., 17 NY3d 369, 374-376 [2011].) Alternatively, the State may have a viable claim for breach of contract against Stantec for failing to purchase insurance to cover incidences arising out of negligent inspection, as it was required to do under article 8 of the contract. However, the State failed to plead either a common-law indemnification claim or a breach of contract claim against Stantec. Indeed, despite all these avenues for relief, the State curiously abandoned its third-party action against Stantec by voluntarily discontinuing its claim against Stantec on the record at oral argument.
Conclusion
Having considered the parties contentions and upon due deliberation, the court hereby declares that Zurich does not owe the State a duty to defend or indemnify it against Mr. Ric-cobono’s claim. Accordingly, it is ordered that the State’s motion is denied in its entirety (M-90059); Zurich’s cross motion (CM-90060) is granted to the extent it seeks to dismiss the *749 State’s third-party claim. All other contentions and alternative forms of relief sought in the motions are hereby denied as academic in light of the court’s decision.

. Kathie Falcone Riccobono’s claim is derivative of Thomas Riccobono’s claim.

. Since Zurich’s cross motion to dismiss pursuant to CPLR 3211 is in the declaratory context it is treated here as a motion for a declaration in Zurich’s favor. (See Siegel, NY Prac § 440 [5th ed 2011].)

. Referring to Stantec.

. Although a certificate of insurance is evidence of a contract of insurance, it is not conclusive proof that a particular type of incident is covered within a given insurance policy. (See Penske Truck Leasing Co. v Home Ins. Co., 251 AD2d 478, 479 [2d Dept 1998]; JT Queens Carwash, Inc. v 88-16 N. Blvd., LLC, 101 AD3d 1089, 1090 [2d Dept 2012].)

. The insurance company is identified in the certificate as Zurich.

. Referring to Stantec.

. Id.

. Though it should be noted that neither Stantec nor claimant submitted affirmations in opposition to the State’s motion.