OPINION OF THE COURT
Arthur D. Spatt, J.
This is a petition by Prudential Property and Casualty Insurance Company (Prudential) for a stay of arbitration of an uninsured motorist’s claim arising from an automobile accident which occurred on October 13,1982. In this occurrence, a vehicle owned by Judith Meat Market, Inc. (Judith), and operated by one Roberto Felipe struck the rear of a vehicle owned by one Thomas Pearce. The Pearce vehicle was insured by the petitioner.
In this accident, claimant Jerome Pearce was a passenger in the Pearce vehicle and sustained personal injuries. Claimant Pearce started a third-party action against Judith, and respondent Country-Wide Insurance Company (Country-Wide) disclaimed coverage, alleging that the Judith policy was canceled for nonpayment of premium on or about August 26, 1982. Thereafter, claimant Pearce served a demand for arbitration against Prudential under the uninsured motorist provision of the Pearce policy.
Prudential applied for a stay of arbitration; and, by order dated January 20, 1984 (McCaffrey, J.), the petitioner’s application for a stay of arbitration was granted pending a trial of the preliminary issue of whether the Judith vehicle was uninsured. *1045 At a hearing held before this court on July 11, 1984, this proceeding was discontinued with prejudice against the respondent Allstate Insurance Company.
FINDINGS OF FACT
There was only one witness at this trial. Respondent CountryWide produced one Angel Arguinzoni who was employed by Country-Wide as an accounting clerk for approximately 11 years. Country-Wide issued a policy of insurance to Judith which had a period of November 21,1981 to November 21,1982. The policy originally covered a 1980 Chevrolet van, which was the one involved in this accident, and a 1978 Chevrolet van. The premium with regard to this policy for these two vehicles was $1,146.
Thereafter, two other vehicles were added to the policy. On May 5,1982, a 1980 Chevrolet was added and on June 2,1982, a 1973 Chevrolet vehicle was added. The additional premium for the 1980 Chevrolet was $313. The additional premium for the 1973 Chevrolet was $332.
The original premium of $1,146 covering the first two vehicles, including the one involved in this occurrence, was paid in full by the insured prior to this accident. The additional premium for the third car, the 1980 Chevrolet, in the sum of $313, was also paid in full by the insured.
Of the balance of $332 due for the fourth vehicle, the sum of $162 was unpaid, and it was based on that unpaid amount of $162 that a notice of cancellation was issued by Country-Wide.
ISSUES PRESENTED
The petitioner asserts that the Country-Wide cancellation was ineffective on the following grounds:
(1) Respondent Country-Wide could not cancel the entire policy covering the first three vehicles (including the vehicle involved in this occurrence) when the insured failed to pay only a portion of the additional premium for the fourth vehicle.
(2) In attempting to cancel its policy, respondent CountryWide failed to strictly comply with the rules of the assigned risk plan and the policy provisions, so that the cancellation was invalid.
CONCLUSIONS
Since it is dispositive, the court need pass upon only one issue raised at trial, to wit: the propriety of canceling the entire insurance policy covering four vehicles for failure to pay the premium on one nonoffending vehicle.
*1046 The law involving the severability of insurance contracts is well developed in this State and has a clear application to the case at the bar. No single formula has yet been devised which furnishes a test for determining in all cases what contracts of insurance are severable and what contracts are entire. Fundamentally, the question of divisibility or severability rests upon the question of intention of the parties. (Donley v Glens Falls Ins. Co., 184 NY 107 [1906]; American Sur. Co. v Rosenthal, 206 Misc 485 [Sup Ct, NY County 1954]; 29 NY Jur, Insurance, § 643, at 634; 43 Am Jur 2d, Insurance, § 312, at 386.) Among the factors that must be examined to discover the intention of the parties are: the entirety of the risk covered by the policy (43 Am Jur 2d, Insurance, § 316); the division of premiums for separate automobiles (American Sur. Co. v Rosenthal, supra); and the special language of the contract of insurance (29 NY Jur, Insurance, § 644, at 634).
In this case, the generally nebulous “intention of the parties” characterization is made concrete by an examination of the policy indorsements which list each vehicle separately, with separate coverage assigned to each vehicle covering bodily injury, property damage, uninsured motorist and no-fault. In addition, each vehicle is assigned a separate premium. The separate premiums assigned to three of the four vehicles, including the offending vehicle, had been paid in full prior to the purported cancellation.
Although there is a conflict of authority throughout the United States with respect to severability of insurance contracts (see, 2 Couch, Insurance 2d, Severability of Contracts § 17:1), the rule in New York is clear and well settled.
In Donley v Glens Falls Ins. Co. (supra, p 111), the rule was set forth by the Court of Appeals, as follows: “[W]e regard it as settled that where, by the same policy, different classes of property, each separately valued, are insured for distinct amounts, even if the premium for the aggregate amount is paid in gross, the contract is severable”.
In American Sur. Co. v Rosenthal (supra, p 489), the court construed the terms of a policy applicable to one vehicle where the question concerned the extent of coverage and the severability of various items of coverage, as follows: “The policy sets forth the limits of liability against each coverage and stipulates for a separate premium for each. In other words, the risks are separately stated and the premiums for each risk are separately fixed. Clearly, therefore, the policy in suit is severable and divisible.”
*1047 The Second Department had occasion to apply the foregoing rules to the issue of severability with regard to two vehicles on a single policy. In Matter of Nationwide Mut. Ins. Co. (Mason) (37 AD2d 15, 16 [2d Dept 1971]), the court was confronted with the following question of law, almost identical to the issue presented herein: “Where a holder of a fully paid automobile liability policy subsequently requests an endorsement adding another automobile to the coverage of the policy, may the carrier cancel the entire policy when the insured fails to pay the additional premium for the added automobile?”
The court found that since the policy involved separate automobiles and the premium for each was separately apportioned, the contract was, therefore, severable (cf. Ming v Corbin, 142 NY 334 [1894]; Matter of Rogers v Graves, 254 App Div 467 [3d Dept 1938]), so that the nonpayment of the premium on one vehicle did not permit the insurer to cancel the policy on both. The court concluded that the rule of law laid down in Donley v Glens Falls Ins. Co. (supra) was “clearly applicable here, for the coverage added by the endorsement had a separate premium and was on a different automobile from the vehicle covered by the policy as theretofore in effect”. (Matter of Nationwide Mut. Ins. Co. [Mason], supra, p 19.)
It is abundantly clear that the instant insurance policy is of the type envisioned by the aforesaid decisions. The respondent Country-Wide argues that the aforementioned cases, particularly Nationwide (supra), can be distinguished because they do not deal with insurance policies issued pursuant to the assigned risk plan. The mere fact that the policy was issued pursuant to the terms of the assigned risk plan does not present an exception to the law of severability as set forth in Donley, Ming and Nationwide (supra).
Arguably, the public policy underlying the assigned risk plan is an added reason to militate against cancellation, as compared with other types of insurance coverage. Cancellation, in general, is tantamount to forfeiture and not favored in the law. (Press Pub. Co. v General Acc. Fire & Life Assur. Corp., 160 App Div 537 [1st Dept 1914], affd 217 NY 648 [1916]; Zivitz v Maryland Cas. Co., 192 App Div 83 [1st Dept 1920]; Matter of Nationwide Mut. Ins. Co. [Mason], supra.) Policies issued under the assigned risk plan are, almost by definition, “poor risks”; and, thus, there is incentive on the part of the insurer to avoid such policies. (See generally, Aetna Cas. & Sur. Co. v O’Connor, 8 NY2d 359 [I960]; Panepinto v Allstate Ins. Co., 108 Misc 2d 1079 [Sup Ct, Monroe County 1981].)
*1048 Notwithstanding the silence of the statute as to the issue of severability, implicit in this legislative enactment is the concept that the plan is designed for the benefit of individuals who are in good faith entitled to, but are unable to procure, insurance through ordinary means due to their status as “poor risks”. Thus, there would appear to be no reason why the common-law rules of severability, as set forth in Donley v Glens Falls Ins. Co. (supra); Ming v Corbin (supra); and Matter of Nationwide Mut. Ins. Co. (Mason) (supra), should be abrogated.
The common law, as discussed, points unequivocally to the conclusion that the instant insurance policy was severable or divisible. As a severable contract of insurance, default as to the portion involving the fourth added vehicle could not render the entire policy in default. The cancellation of the entire policy was thus improper and ineffective, and the court need not consider the other issues raised by the petitioner at the trial.
Accordingly, judgment is granted in favor of the petitioner, permanently staying respondent Jerome Pearce from arbitrating this uninsured motorist claim against the petitioner on the ground that there was a policy of insurance in effect with respondent Country-Wide Insurance Company covering the Judith vehicle at the time of this accident on October 13, 1982.