This opinion is uncorrected and subject to revision before publication in the New York Reports.
-----------------------------------------------------------------

No. 11
Lend Lease (US) Construction LMB
Inc., et al.,
           Appellants,
        v.
Zurich American Insurance
Company, et al.,
           Respondents.

           Matthew J. Lodge, for appellant Lend Lease (US)
Construction.
           Richard J. Lambert, for appellant Extell West 57th
Street LLC.
           Philip C. Silverberg, for respondents.

FAHEY, J.:

           In this action, plaintiffs seek a declaration of
coverage under a program of builder's risk insurance furnished by
defendants for loss -- specifically, damage to a tower crane --
caused by Superstorm Sandy.  At issue here is the question
whether the crane is covered in the first instance under the

- 1 -

insurance provided for temporary works and, if so, whether the contractor's tools exclusion defeats that initial grant of coverage.  Also at issue -- and critical to our analysis -- is the question whether the contractor's tools exclusion is ineffective because it would render the coverage granted in the first instance for temporary works illusory.  Assuming that the policy contains coverage for the crane in the first instance, we conclude that the contractor's tools exclusion would defeat that coverage, and that such exclusion does not render the coverage afforded under the temporary works provision of the policy illusory.  We therefore affirm the Appellate Division order granting summary judgment declaring that defendants have no obligation to provide coverage for the subject loss under the policy.

I.

In October 2012, plaintiff Extell West 57th Street LLC (Extell) was constructing a 74-story skyscraper -- commonly known as the One57 Building -- at 157 West 57th Street in Manhattan. Extell had retained plaintiff Lend Lease (US) Construction LMB Inc. (Lend Lease) to act as the construction manager for that project and, in that capacity, Lend Lease had contracted with nonparty Pinnacle Industries II, LLC (Pinnacle) for certain structural concrete work with respect to that endeavor.  Pursuant to its contract with Lend Lease, Pinnacle was to furnish and install, among other things, two diesel fuel tower cranes.

Only one of those cranes is at issue here.  That crane was installed on a reinforced slab on the 20th floor of the building and, once all other trade work was completed at the project, it was to be dismantled and removed from the site. Several components of the crane, including beams cast into the slab and materials reinforcing the locations at which the crane was "tied" to the building as it arose next to that edifice, were designed to permanently remain part of the building upon the completion of construction.

By October 29, 2012, the crane had risen approximately 750 feet from its base.  On that day, Superstorm Sandy made landfall in the New York City area.  One of the most dramatic images of that landfall depicts the damage caused to the crane when the boom of the crane collapsed in high winds and teetered precariously from a height equal to the top of the building. Afterwards, "[t]he . . . blocks [surrounding the building] were evacuated for six days and the crisis became a riveting symbol of the city's wounded infrastructure" (Charles V. Bagli, As Crane Hung in the Sky, a Drama Unfolded to Prevent a Catastrophe Below, New York Times, Nov. 6, 2012 [available at: http://www.nytimes.com/2012/11/07/nyregion/drama-behind-securing-crippled-crane-in-manhattan.html]).

At the time of that incident, Extell was the named insured on a program of builder's risk insurance containing coverage in the amount of $700 million, that is, the total

estimated cost of the project.  The program is referred to as the "policy," but it actually is an amalgamation of five separate insurance contracts, each of which was issued by a different defendant-insurer and each of which covers a different percentage of the aggregate risk.  Defendant Zurich American Insurance Company assumed half of the aggregate risk and furnished the "lead" policy with respect to that exposure.

At issue in this action is whether the policy covers damages sustained by Extell (the named insured) and Lend Lease (an additional insured) resulting from the weather-related harm to the crane.[1]  That determination turns on whether the crane is covered under the policy in the first instance and, if so, whether the policy's contractor's tools, machinery, plant and equipment exclusion (generally, contractor's tools exclusion) defeats that coverage.[2]

Following defendants' denial and disclaimer of coverage with respect to this matter,[3] plaintiffs commenced this action

---

[1]     Specifically, plaintiffs sought coverage for "costs relat[ing] directly to stabilizing, removing, and replacing the damaged crane."

[2]     Detailed analyses of the relevant parts of the policy's insuring clause and contractor's tools exclusion appear in sections II and III of this opinion.  Here, it bears noting only that the question whether the policy contains coverage in the first instance for the crane turns in part on whether the crane is a "temporary work," as that phrase is incorporated in the insuring clause.

[3]     After plaintiffs provided timely notice of their purported losses, defendants denied and disclaimed coverage for

seeking, among other things, a declaration that the crane is covered property under the policy, and that coverage for the crane is not subject to any policy exclusion.

Supreme Court entered an order denying the competing motions and cross motions for summary judgment that eventually were filed with respect to that coverage question, ruling that there is an issue of fact whether the contractor's tools exclusion defeats coverage for the subject loss.  On appeal, however, the Appellate Division -- with two Justices dissenting -- modified that order by granting defendants' cross motions for summary judgment and declaring "that defendants have no obligation to provide coverage under the . . . policy" (136 AD3d 52, 61 [1st Dept 2015]).  The court held that "the . . . crane was integral, not 'incidental to the project,' and therefore does not fall within the [policy's] definition of Temporary Works" (id. at 54).  "Even if the . . . crane fell within the definition of Temporary Works," the court added, "the contractor's tools . . . exclusion would be applicable and . . . enforceable" (id.).

By contrast, the dissenters would have affirmed Supreme Court's order, reasoning that there is an issue of fact whether the policy contains coverage for the crane in the first instance (see id. at 69 [Mazzarelli, J.P., and Richter, J., dissenting]),

those claims through a joint letter.  There, defendants maintained that the policy does not cover the subject loss in the first instance and that, even if such coverage exists, it is defeated by the contractor's tools exclusion.

and that, although the contractor's tools exclusion pertains to the crane, such exclusion is unenforceable because to apply that exclusion here "would be to render coverage for temporary works illusory" (id. at 70). In essence, the dissenters concluded that the application of the contractor's tools exclusion effectively would defeat all of the coverage granted in the first instance by the policy's temporary works provision, and that such exclusion therefore is unenforceable as a matter of public policy.

Plaintiffs appeal to this Court as of right (see CPLR 5601 [a]), and we now affirm the Appellate Division order.

II.

"In determining a dispute over insurance coverage, we first look to the language of the policy" (Consolidated Edison Co. of N.Y., Inc. v Allstate Ins. Co., 98 NY2d 208, 221 [2002]; see Matter of Viking Pump, Inc., 27 NY3d 244, 257 [2016]). "As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (Vigilant Ins. Co. v Bear Stearns Cos., Inc., 10 NY3d 170, 177 [2008] [internal quotation marks omitted]; see Viking Pump, 27 NY3d at 257; Selective Ins. Co. of Am. v County of Rensselaer, 26 NY3d 649, 655 [2016]). Of course, where "the policy may be reasonably interpreted in two conflicting manners, its terms are ambiguous" (Matter of Mostow v State Farm Ins. Cos., 88 NY2d 321, 326 [1996]), and "any

ambiguity must be construed in favor of the insured and against the insurer" (White v Continental Cas. Co., 9 NY3d 264, 267 [2007]; see Federal Ins. Co. v International Bus. Machs. Corp., 18 NY3d 642, 646 [2012]).

The question whether the policy covers the crane in the first instance turns on our interpretation of language germane to the policy's insuring agreement.[4]  On this point the parties dispute whether the crane is a "temporary . . . structure" within the meaning of the policy, and whether the crane was "incidental

---

[4]     The insuring clause provides that, "[s]ubject to the terms, exclusions, limitations and conditions contained [therein, the policy] insures against all risks of direct physical loss of or damage to Covered Property while at the location of the **INSURED PROJECT\*** . . . ."  The policy defines "covered property" as "the insured's interest in," among other things, "temporary works."  The phrase "temporary works," in turn, means

> "[a]ll scaffolding (including scaffolding erection costs), formwork, falsework, shoring, fences, and temporary buildings or structures, including office and job site trailers, all incidental to the project, the value of which has been included in the estimated **TOTAL PROJECT VALUE\*** of the **INSURED PROJECT\*** declared by the Named Insured."

For its part, the phrase "total project value" is defined as

> "[t]he total value of **PROPERTY UNDER CONSTRUCTION\*, TEMPORARY WORKS\***, existing structures (when endorsed to the Policy) and **LANDSCAPING MATERIALS\***, plus labor costs that will be expended in the **INSURED PROJECT\***, plus site general conditions, construction management fees, and contractor's profit and overhead, all as stated in the Declarations."

to the project."[5]  We conclude that the crane was a "structure" (see Lewis-Moors v Contel of N.Y., 78 NY2d 942, 943 [1991] [defining "structure" as including "any production or piece of work artificially built up or composed of parts joined together in some definite manner"]; see Joblon v Solow, 91 NY2d 457, 464 [1998] [same]; see also Merriam-Webster's Collegiate Dictionary 1238 [11th ed 2003] [defining "structure" as "something (as a building) that is constructed"]).  We further conclude that the crane was "temporary" in that it was anchored and tied to the building only "during construction" and was to be "removed when . . . no longer needed."  Similarly, we conclude that the parties' additional dispute as to whether the crane was "incidental to the project" is of no moment.  The principal purpose of the project was the construction of the building, not the crane, and the installation and disassembly of the crane were merely incidental steps toward the completion of that edifice.

        The parties also dispute whether the value of the crane was disclosed as part of the "total project value," another requirement for coverage.[6]  On this record, we cannot make that

---

        [5]    To the extent the crane is not a "temporary . . . structure" and was not "incidental to the project," it would not constitute a "temporary work" within the policy and therefore would not be covered thereunder.

        [6]    To the extent the value of the crane was not disclosed as part of the "total project value," the crane would not constitute a "temporary work" within the policy and therefore would not be covered thereunder.

determination as a matter of law.  The evidence submitted with respect to the "total project value" question includes an affidavit of a Lend Lease executive, who averred that the actual market value of the crane was impliedly, but not expressly, disclosed to defendants as required for the crane to constitute a "temporary work" -- and, therefore, "covered property" -- within the meaning of the policy.  Consequently, we agree with the dissenters at the Appellate Division to the extent they concluded that there is a triable issue of fact whether there is coverage for the subject loss in the first instance (see 136 AD3d at 71-72 [Mazzarelli, J.P., and Richter, J., dissenting]; see also Platek v Town of Hamburg, 24 NY3d 688, 694 [2015] ["it is the insured's burden to establish the existence of coverage"]; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).

III.

Although we depart from the Appellate Division order by concluding that there is an issue of fact whether the policy contains coverage for the subject loss in the first instance, we nevertheless reach the same result as that court.  Namely, we conclude that there is no coverage for that loss under the policy because any coverage afforded by that contract in the first instance is defeated by the contractor's tools exclusion.  That exclusion provides that

> "[t]h[e] Policy does not insure against loss
> or damage to . . . Contractor's tools,
> machinery, plant and equipment including
> spare parts and accessories, whether owned,

loaned, borrowed, hired or leased, and property of a similar nature not destined to become a permanent part of the **INSURED PROJECT\***, unless specifically endorsed to the Policy."

"'[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation'" (Dean v Tower Ins. Co. of N.Y., 19 NY3d 704, 708 [2012], quoting Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984] [internal citations omitted]).  Extell, in particular, contends that defendants cannot have met that burden here because the crane is not a "tool" or "equipment" within the meaning of the contractor's tools exclusion.  The subject exclusion, however, also defeats coverage for "machinery," and the crane falls squarely within this definition of that term.  "Machinery" means, among other things, "machines in general or as a functioning unit," and "machine" is defined as "a mechanically, electrically, or electronically operated device for performing a task" (Merriam-Webster's Collegiate Dictionary 744 [11th ed 2003]).  Although Extell submitted evidence that "components of [the crane were] to remain permanently part of the building following the completion of construction," those "components" consisted primarily of reinforcements and ties, and the record conclusively reflects that the principal parts of the crane were "not destined to become a part of the [building]" upon the

completion of construction.  To that end, we conclude the
contractor's tools exclusion applies to the crane.

We further conclude that there is no force to
plaintiffs' effort to avoid application of that exclusion on the
ground that it is so broad as to render coverage afforded under
the temporary works provision of the policy illusory.  To be
sure, "[a]n insurance agreement is subject to principles of
contract interpretation" (Universal Am. Corp. v National Union
Fire Ins. Co. of Pittsburgh, Pa., 25 NY3d 675, 680 [2015]), and
an illusory contract -- that is, "[a]n agreement in which one
party gives as consideration a promise that is so insubstantial
as to impose no obligation" -- is "unenforceable" (Black's Law
Dictionary 370 [9th ed 2009]; see generally Thomas J. Lipton,
Inc. v Liberty Mut. Ins. Co., 34 NY2d 356, 361 [1974]; Madawick
Contr. Co. v Travelers Ins. Co., 307 NY 111, 118 [1954]).  We
agree with the Appellate Division, however, that "'[a]n insurance
policy is not illusory if it provides coverage for some acts[
subject to] a potentially wide exclusion'" (136 AD3d at 60,
quoting Associated Community Bancorp., Inc. v St. Paul Mercury
Ins. Co., 118 AD3d 608 [1st Dept 2014] [internal quotation marks
and citations omitted]).

Indeed, the contractor's tools exclusion does not
defeat *all* of the coverage afforded under the policy's temporary
works provision.  That exclusion would not defeat coverage
initially granted for such things as the cost of erecting

scaffolding, for "temporary buildings," and for such other things as "formwork, falsework, shoring,[and] fences," which are not "tools" within the meaning of the exclusion.  The enforcement of the exclusion does not create a result that "'would have the exclusion swallow the policy'" (Reliance Ins. Co. v National Union Fire Ins. Co. of Pittsburgh, Pa., 262 AD2d 64, 65 [1st Dept 1999], quoting Camp Dresser & McKee Home Ins. Co., 30 Mass App Ct 318, 323, 568 NE2d 631, 634 [1991]).  For the same reason the exclusion does not render the coverage granted under the temporary works provision illusory.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, with costs.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein and Garcia concur. Judge Wilson took no part.

Decided February 14, 2017