■ ANTONIO GARCIA, Respondent, v GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant. [58 NYS3d 428]—

In an action pursuant to Insurance Law § 3420 (a) (2) to recover the amount of an unsatisfied judgment against the defendant's insured, the defendant appeals from an order of the Supreme Court, Nassau County (J. Murphy, J.), entered June 17, 2015, which denied its motion for summary judgment dismissing the complaint.

Ordered that the order is reversed, on the law, with costs, and the defendant's motion for summary judgment dismissing the complaint is granted.

On May 19, 2006, the plaintiff, Antonio Garcia, was injured when he was struck by a vehicle in a parking lot in Brooklyn. Garcia commenced an action against Jeanne Rakowski, who owned the vehicle, and Linda Danielson, who, with Rakowski's permission, was driving it when it struck Garcia. In 2012, Garcia obtained a judgment against Rakowski and Danielson. After obtaining partial satisfaction of that judgment, Garcia sought to recover the unsatisfied portion of it from Government Employees Insurance Company (hereinafter GEICO). GEICO had issued a personal umbrella policy (hereinafter the umbrella policy) to Rakowski, and Garcia claimed that the umbrella policy was in effect when Rakowski's vehicle struck him. After GEICO failed to satisfy the remainder of the judgment within 30 days of Garcia's request, Garcia commenced this action against GEICO pursuant to Insurance Law § 3420 (a) (2). He alleged, in relevant part, that, at the time of the accident, Rakowski's umbrella policy, in the amount of $1,000,000, was in effect. He also alleged that GEICO's purported cancellation of that policy before the accident was "improper, invalid, and ineffective."

GEICO moved for summary judgment dismissing the complaint on the ground that Rakowski's umbrella policy was not in effect at the time of the accident. Specifically, GEICO contended that Rakowski's umbrella policy, which contained a liability limit of $2,000,000 for the contracted policy period, had been cancelled for nonpayment of premium, effective at 12:01 a.m. on May 19, 2006, only a few hours before Rakowski's vehicle struck Garcia.

In support of its motion, GEICO submitted evidence that in

August 2005, Rakowski, who had a coverage limit of $1,000,000 for the period ending October 10, 2005, requested, and received, a renewal policy, for the period from October 10, 2005, to October 10, 2006, with a coverage limit of $2,000,000. Rakowski also added a rental property to the policy for that period. The increase in the coverage limit from $1,000,000 to $2,000,000 resulted in a $199 increase in the premium. The addition of the rental property, however, did not result in any increase in the premium. Specifically, GEICO submitted the "Amended Declarations," dated August 31, 2005, showing the $2,000,000 coverage limit for the period from October 10, 2005, to October 10, 2006, the increase of $199 "FOR ADDITIONAL COVERAGE TO SECOND MILLION," and the increase of $0 for the addition of the rental property. GEICO also submitted Rakowski's deposition testimony that she had requested the $2,000,000 coverage limit for the period beginning October 10, 2005. Notably, the Amended Declarations stated: "AMENDED DECLARATION EFFECTIVE 10/10/05 SUPERSEDES ANY PREVIOUS DECLARATION BEARING THE SAME NUMBER FOR THIS POLICY PERIOD." GEICO also submitted evidence that before the beginning of the renewal term, Rakowski made a $306 premium payment (the amount of the previous year's premium), but had not paid the additional $199 that was due for the increase in her coverage limit. Finally, GEICO submitted evidence that in November 2005, it had mailed Rakowski a notice informing her that her policy would be cancelled effective 12:01 a.m. on May 19, 2006, if she did not pay the remainder of the premium. The cancellation notice referenced Rakowski's policy number, which remained constant throughout the various policy periods.

Garcia opposed GEICO's motion. He contended that there was an issue of fact as to whether Rakowski's payment of $306 before the commencement of the policy period beginning October 10, 2005, secured a fully paid policy providing a full year of coverage for $1,000,000. Additionally, Garcia contended that GEICO had failed to establish, prima facie, that it had validly cancelled the policy, whatever the limit of coverage. The Supreme Court denied GEICO's motion, holding that there was a triable issue of fact as to whether Rakowski's umbrella policy was severable as to the limits of liability. GEICO appeals.

GEICO contends that, as a matter of law, Rakowski's umbrella policy for the period commencing October 10, 2005, provided coverage of $2,000,000, and that Rakowski's payment of only a portion of her premium for that policy resulted in

GEICO's valid cancellation of the policy after the prorated period covered by her payment expired. The umbrella policy, and Rakowski's coverage, terminated upon cancellation at 12:01 a.m. on May 19, 2006, a few hours before Garcia was injured. Garcia, in contrast, contends there is a triable issue of fact as to whether Rakowski's umbrella insurance contract was, on the one hand, "entire," or, on the other hand, "severable" or "divisible." If the policy was severable or divisible, Garcia contends, then Rakowski had a fully paid policy for $1,000,000 that lasted from October 10, 2005, to October 10, 2006. Rakowski's failure to pay the premium applicable to the "second million" of coverage meant only that she did not have the second million dollars of coverage, at any time. We agree with GEICO.

Resolution of disputes about insurance coverage begin with examination of the language of the policy (see *Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co.*, 28 NY3d 675, 681 [2017]; *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208, 221 [2002]). Interpretation of unambiguous policy provisions, which must be given their plain and ordinary meaning, is a question of law (see *Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co.*, 28 NY3d at 681-682; *Vigilant Ins. Co. v Bear Stearns Cos., Inc.*, 10 NY3d 170, 177 [2008]). Further, while ambiguities in an insurance contract are to be interpreted in favor of the insured (see *Lend Lease [US] Constr. LMB Inc. v Zurich Am. Ins. Co.*, 28 NY3d at 682; *Matter of Viking Pump, Inc.*, 27 NY3d 244, 257 [2016]), ambiguities arise only where there is more than one *reasonable* interpretation of the policy, as measured by the reasonable expectations of the average insured. In other words, even where policy language is susceptible of more than one interpretation, there is no ambiguity if only one of them is reasonable (see *Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642, 650 [2012]; *Great Am. Restoration Servs., Inc. v Scottsdale Ins. Co.*, 78 AD3d 773, 776 [2010]; *Antoine v City of New York*, 56 AD3d 583, 584 [2008]).

More specifically, an insurance contract is divisible when the contracting parties intend that it be divisible (see *First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d 297, 299 [1971]; *Donley v Glens Falls Ins. Co.*, 184 NY 107, 111 [1906]). The parties' intention is to be gleaned from the language of the contract and the application of the rules governing contractual interpretation (see *First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d at 299). The general rule is that an insurance contract

is not divisible " 'when by its terms, nature, and purpose, it contemplates and intends that each and all of its parts and the consideration therefor shall be common each to the other and interdependent. On the other hand, the contract is considered severable and divisible when by its terms, nature, and purpose, it is susceptible of division and apportionment' " (*id.* at 299-300, quoting 29 NY Jur, Insurance § 643).

The question of divisibility arises when, for example, a policy covers separate properties or separate risks, and the policyholder has breached a condition or warranty as to one property or one type of risk, but not involving the loss at issue. In the context of the insured's nonpayment of a portion of the premium, the issue of divisibility arises when, for example, a policyholder has made a change to a fully paid policy but has not paid the additional premium occasioned by the change. Depending on the insurance contract at issue, the lines of divisibility may run between the types of risk covered by the contract, such as property damage as opposed to personal injury (*see American Sur. Co. of N.Y. v Rosenthal*, 206 Misc 485, 488 [Sup Ct, Nassau County 1954]), or between the different properties covered, such as where different vehicles or properties are covered by the policy (*see Matter of Nationwide Mut. Ins. Co. [Mason—Lumbermens Mut. Cas. Co.]*, 37 AD2d 15, 18 [1971]; *Matter of Prudential Prop. & Cas. Ins. Co. [Pearce]*, 126 Misc 2d 1044 [Sup Ct, Nassau County 1985], *affd* 120 AD2d 597 [1986]; *cf. First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d at 300). When, however, an insured has increased liability limits of an entire policy as of the inception date of coverage, but has not paid the full premium and the policy has thus lapsed, the Court of Appeals has held that the policy is not divisible to provide coverage in a lesser amount than stated in the policy, at least where no different type of risk had been added to the policy (*see First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d at 299).

Here, there is no ambiguity in Rakowski's umbrella policy as to either coverage or divisibility. Rakowski contracted, before the policy term began, for an umbrella policy covering specified risks, with a coverage limit of $2,000,000. The policy she received unambiguously provided for the amount of coverage she had requested with respect to risks she had specified: the Amended Declarations of the insurance contract, dated August 31, 2005, stated that, for the policy period, of October 10, 2005, to October 10, 2006, the risks pertained to the specified properties and vehicles, and the coverage limit pertaining to those risks was $2,000,000.

Garcia argues, and our dissenting colleagues would conclude, that, because of how the premiums were set out in the Amended Declarations, there is an ambiguity as to whether Rakowski received a policy for $2,000,000 or $1,000,000, or as to whether the policy was divisible or severable as to the amount of coverage. We disagree. The fact that the premium was separately stated for the increase in the coverage limit is irrelevant here. The $1,000,000 renewal proposal of the policy from the previous year had already been sent out before Rakowski asked for an increase in the amount of coverage to $2,000,000. The "Amended Declarations," which, by their terms, "SUPERSEDE[D] ANY PREVIOUS DECLARATION" for the policy period beginning October 10, 2005, were sent to Rakowski after she asked for the changes to her policy. Thus, the additional billing, which separated the original premium from the amount attributable to the increase, was unremarkable and did not give rise to an ambiguity in the policy that Rakowski had asked for and GEICO agreed to provide: a liability limit of $2,000,000 as of the beginning of the new policy period. Garcia is not seeking to divide Rakowski's policy, but, in effect, to rewrite it to provide what Rakowski never asked for: a policy with coverage of only $1,000,000.

As Garcia points out, forfeiture is not favored in the law (*see Matter of Prudential Prop. & Cas. Ins. Co. [Pearce]*, 126 Misc 2d at 1047), and, where cancellation of an entire policy would result in forfeiture, courts may be reluctant to hold that an insurance contract is not divisible (*see id.*; *see also Matter of Nationwide Mut. Ins. Co. [Mason—Lumbermens Mut. Cas. Co.]*, 37 AD2d at 20). There is, however, no forfeiture here. Rakowski asked for, and received, a $2,000,000 policy, and she had $2,000,000 in coverage from the outset of the policy period, October 10, 2005. Because she only paid part of the premium, her coverage was cancelled, upon notice, when the prorated premium for the coverage she contracted for was exhausted. In other words, Rakowski got everything she paid for, and she forfeited nothing. That Rakowski "just missed" being insured for the injuries caused to Garcia is unfortunate, but nonetheless irrelevant to this analysis. GEICO sent its cancellation notice more than six months before Rakowski's vehicle struck Garcia. We are not free to alter the meaning of the policy to avoid the result caused by Rakowski's nonpayment of the premium for her $2,000,000 policy (*see White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]; *cf. Greenfield v Philles Records*, 98 NY2d 562, 573 [2002]).

Next, because there is no ambiguity in what Rakowski

contracted for—$2,000,000 in coverage, as stated in the Amended Declarations of the policy—there is likewise no ambiguity in GEICO's notice of cancellation, which referred to the policy number of Rakowski's umbrella policy. The cancellation notice could only have pertained to Rakowski's coverage of $2,000,000, which was the only coverage the policy provided for the policy period (*see First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d at 300).

Finally, GEICO established, prima facie, that it properly sent Rakowski notice of the cancellation (*see Jones v Allstate Ins. Co.*, 221 AD2d 596, 597 [1995]). In opposition, Garcia failed to raise a triable issue of fact.

Garcia's remaining contentions are without merit.

Accordingly, the Supreme Court should have granted GEICO's motion for summary judgment dismissing the complaint. Balkin, J.P., Chambers and LaSalle, JJ., concur.

Sgroi, J., dissents, and votes to affirm the order appealed from, with the following memorandum, in which Austin, J., concurs: The issue presented in this case is whether an umbrella insurance policy provided by the defendant Government Employees Insurance Company (hereinafter GEICO) to Jeanne Rakowski was entire, such that it provided $2,000,000 of coverage in exchange for a premium of $505, or whether it was severable, such that it provided $1,000,000 of coverage in exchange for a premium of $306, and an additional $1,000,000 in coverage in exchange for an additional premium of $199. If the contract was severable, then Rakowski's payment of $306 was sufficient to secure $1,000,000 of coverage for the entire policy period, a result which would avoid a forfeiture of Rakowski's umbrella insurance protection for a portion of the policy period, as favored by the law (*see Matter of Prudential Prop. & Cas. Ins. Co. [Pearce]*, 126 Misc 2d 1044, 1047 [Sup Ct, Nassau County 1985], *affd* 120 AD2d 597 [1986]). Since the question of whether the contract was entire or severable rests on the intention of the parties, and there are factual questions as to those intentions, as demonstrated by ambiguity in the policy, billing statements, and notice of cancellation, I would affirm the denial of GEICO's summary judgment motion.

Jeanne Rakowski was issued a personal umbrella insurance policy by GEICO, effective October 10, 2003. The policy carried a limit of liability of $1,000,000, and covered Rakowski's primary residence and a car. The policy was renewed for the policy period of October 10, 2004, to October 10, 2005. In March 2005, Rakowski made a change to the policy to add another vehicle, after which her total premium for the policy was $306.

On August 29, 2005, GEICO sent to Rakowski renewal papers for her policy, for the period of October 10, 2005, to October 10, 2006, at the same premium of $306. The letter, enclosing the renewal policy urged Rakowski to consider increasing the limits of her umbrella policy. The following day, Rakowski contacted GEICO and requested an increase in the coverage limit from $1,000,000 to $2,000,000, as well as the addition of a rental property in Brooklyn. On August 31, 2005, GEICO sent Rakowski "Amended Declarations," containing the same policy number that appeared on her prior umbrella policies. The Amended Declarations listed the limit of liability as $2,000,000 and included the Brooklyn property. As a separate line item, a premium of $199 for "additional coverage to second million" was listed. The premium of $199, when added to the original $306 premium, brought the total premium to $505.

On the same day, although Rakowski was on a "one-pay" rather than an installment payment plan, she was sent a bill for the "minimum amount due" in the amount of $306. On October 18, 2005, Rakowski was separately billed for $199. While Rakowski paid $306, she did not pay the additional $199. On November 4, 2005, GEICO issued a notice of cancellation for nonpayment of premium, advising that her "insurance as indicated below is hereby Cancelled as of 12:01 a.m." on May 19, 2006. "Below" was a box containing the policy number and stating: "Please act now to prevent cancellation of your insurance protection."

On the afternoon of May 19, 2006, Rakowski loaned her car to an employee and the car was involved in an accident in which the plaintiff was injured. The following day, GEICO called Rakowski to attempt to collect "the premium," but no one answered the telephone.

Upon an award of damages to the plaintiff arising from the accident, the plaintiff requested payment by GEICO of the amount of the judgment that remained unpaid after exhaustion of primary insurance policies. When GEICO failed to pay, the plaintiff commenced this action against GEICO pursuant to Insurance Law § 3420 to recover the amount of the unsatisfied judgment against Rakowski. GEICO moved for summary judgment dismissing the complaint, asserting that the entire umbrella policy was cancelled hours before the accident. The plaintiff responded that the additional coverage attributable to the unpaid premium of $199 was severable, and thus, there was a $1,000,000 umbrella policy, paid for by Rakowski and in effect at the time of the accident. The Supreme Court denied the motion, concluding that issues of fact existed as to whether the policy was severable.

"Fundamentally and primarily, the question of divisibility or severability rests upon the question of intention of the parties deducible from the stipulations of the contract and the rules of construction governing the ascertainment of that intention" (*First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d 297, 299 [1971] [internal quotation marks omitted]; *see Christian v Christian*, 42 NY2d 63, 73 [1977]). "As a general rule, a contract is entire when by its terms, nature, and purpose, it contemplates and intends that each and all of its parts and the consideration therefor shall be common each to the other and interdependent. On the other hand, the contract is considered severable and divisible when by its terms, nature, and purpose, it is susceptible of division and apportionment" (*First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d at 299-300 [internal quotation marks omitted]). Where " 'the language of a contract is ambiguous, its construction presents a question of fact which may not be resolved by the court on a motion for summary judgment' " (*Majawalla v Utica First Ins. Co.*, 71 AD3d 958, 960 [2010], quoting *Pepco Constr. of N.Y., Inc. v CNA Ins. Co.*, 15 AD3d 464, 465 [2005]).

Here, GEICO failed to eliminate triable issues of fact as to whether the parties intended their contract to be severable, such that the notice of cancellation would affect only the increased coverage. In particular, the Amended Declarations provided to the insured listed a separate premium "for additional coverage to second million." Rakowski was then separately billed $306, the same amount as the premium for the first $1,000,000 of coverage, and $199, the amount listed as the premium "for additional coverage to second million." These facts are equivocal as to whether the parties intended the coverage for the first $1,000,000 and the coverage for the second $1,000,000, "and the consideration therefor" to be "common each to the other and interdependent" or to be divisible (*First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.*, 29 NY2d at 299; *cf. Matter of Nationwide Mut. Ins. Co. [Mason—Lumbermens Mut. Cas. Co.]*, 37 AD2d 15, 19 [1971]; *Matter of Prudential Prop. & Cas. Ins. Co. [Pearce]*, 126 Misc 2d at 1046).

The notice of cancellation was similarly equivocal. It advised that Rakowski's "insurance as indicated below" was cancelled. While the box that appeared "below" contained the policy number, it advised Rakowski that she should "act now to prevent cancellation of [her] insurance *protection*" (emphasis added) as opposed to her insurance *policy*. These facts make

this matter distinguishable from *First Sav. & Loan Assn. of Jersey City, N. J. v American Home Assur. Co.* (29 NY2d 297 [1971]), in which the Court of Appeals held that an endorsement added to an insurance policy to increase the amount of coverage in consideration of an additional premium was not divisible from the underlying policy, and thus, that a notice of cancellation for nonpayment of the additional premium affected the entire policy. In that case, the endorsement recited that it was "attached to and forming part of [the] policy" (*id.* at 299). Thus, the contract in that case, unlike in the present case, explicitly provided that the initial policy and the endorsement of additional coverage formed one, inseparable contract (*see id.* at 300). Similarly, as the Court of Appeals emphasized, the notice of cancellation in that case, as opposed to that issued in the present case, "specifically referred to [the] policy . . . in its entirety," reciting "the policy . . . issued to you, is cancelled" (*id.* at 299-300).

Finally, the insured in *First Sav. & Loan* was billed a separate premium for additional coverage because the endorsement was added months after the policy period began and the premium was paid. Here, in contrast, no premium had been paid at the time Rakowski requested additional coverage. Yet, even though Rakowski was not on an installment payment plan, rather than sending a bill for $505, GEICO billed Rakowski $306, representing the premium charged for the first $1,000,000 of coverage, and, separately, $199, representing the additional $1,000,000 of coverage. The deposition testimony of GEICO's representative as to the alleged reasons Rakowski was billed in that manner, which concerned GEICO's automated billing system, merely raises an issue of fact.

Similarly, as my colleagues in the majority point out, after Rakowski requested the changes to her policy, and, as GEICO characterizes it, rejected its offer of the renewal policy, GEICO issued an entirely new declarations page. Yet, GEICO did not list a premium of $505 for $2,000,000 of coverage. Under these circumstances, the fact that GEICO persisted in listing a $306 premium for $1,000,000 of coverage, and added a separate $199 premium for a second $1,000,000 of coverage is not, as a matter of law, irrelevant. The Amended Declarations, particularly when coupled with the separate billing statements, created a factual question as to whether the parties agreed that GEICO would provide Rakowski with $2,000,000 of coverage if she paid $505, or, if they agreed that GEICO would provide her with $1,000,000 of coverage if she paid $306, and $2,000,000 of coverage if she paid an additional $199.

Significantly, "the test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy" (*Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326-327 [1996]; *see Hansard v Federal Ins. Co.*, 147 AD3d 734 [2017]). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002], quoting *Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]; *see Hansard v Federal Ins. Co.*, 147 AD3d 734 [2017]). Here, focusing on the reasonable expectations of the average insured, it cannot be said that the language of the policy, with its accompanying separate billing statements, was "unattended by danger of misconception" as to whether Rakowski could secure $1,000,000 of coverage by paying $306 (*Breed v Insurance Co. of N. Am.*, 46 NY2d at 355).

GEICO further argues that the fact that it would have been liable to pay up to $2,000,000 under the policy had the accident occurred before May 19, 2006, demonstrates that the policy was not severable. This contention begs the question, however. If the policy was not severable, then GEICO would have been obligated to pay that amount prior to May 19, 2006, because, prorating the $306 premium, Rakowski paid for $2,000,000 of coverage up to that date. On the other hand, if the policy was severable, GEICO would only have been obligated to pay that amount because it failed to cancel the additional coverage sooner, on the ground of nonpayment.

In sum, GEICO failed to demonstrate, prima facie, that the subject policy was entire and indivisible, and that the notice of cancellation therefore affected the whole policy, as opposed to merely the additional $1,000,000 of coverage. As previously noted, "[c]ancellation, in general, is tantamount to forfeiture and not favored in the law" (*Matter of Prudential Prop. & Cas. Ins. Co. [Pearce]*, 126 Misc 2d at 1047). Since GEICO failed to establish its prima facie entitlement to judgment as a matter of law, we need not consider the sufficiency of the plaintiff's opposition papers (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).

Accordingly, I would affirm the denial of GEICO's motion for summary judgment dismissing the complaint.