[4 NE3d 941, 981 NYS2d 640]

HERZL RAGINS, Appellant, v HOSPITALS INSURANCE COMPANY, INC., et al., Respondents.

Argued November 14, 2013; decided December 17, 2013

APPEARANCES OF COUNSEL

*Silverson, Pareres & Lombardi, LLP*, New York City (*Joseph T. Pareres* of counsel), for appellant.

*Shaub, Ahmuty, Citrin & Spratt, LLP*, Lake Success (*Christopher Simone* of counsel), for respondents.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed and the case remitted to that court for consideration of issues raised but not determined on the appeal to that court.

Plaintiff brought this action for breach of an insurance contract, asserting that defendants Hospitals Insurance Company and HANYS Insurance Company (collectively HIC) must pay interest on a $1,100,000 medical malpractice judgment against plaintiff under an excess professional liability insurance policy issued by HIC because the liquidator of the insolvent primary insurer has already paid the $1,000,000 per occurrence liability limit of plaintiff's primary professional liability insurance policy, thus triggering the coverage of the excess policy. By an order dated June 13, 2012, the Appellate Division held that HIC was entitled to dismissal of plaintiff's breach of contract claim and remitted the matter to Supreme Court for the entry of a judgment, inter alia, declaring that HIC was not obligated to indemnify plaintiff for the remaining amount of unpaid interest incurred in connection with the underlying malpractice action (*see Ragins v Hospitals Ins. Co., Inc.*, 96 AD3d 819, 819-821 [2d Dept 2012]). Plaintiff appeals by permission of this Court (20 NY3d 853 [2012]). We conclude that, under the plain language of the primary and excess policies, the liquidator's payment of the primary policy's $1,000,000 liability limit triggered HIC's duty to pay all remaining amounts in connection with the judgment, including interest, and we therefore reverse.

At the outset, the plain language of the primary policy does not obligate the now-bankrupt primary insurer, and by extension its liquidator, to pay interest on any judgment against plaintiff if it has already paid the $1,000,000 liability limit of the primary policy toward the judgment. In particular, the "supplementary payments" section of the primary policy obligates the primary insurer to pay postjudgment interest only "before" it has "paid . . . that part of the judgment which does not exceed the limit of the company's liability thereon," and the primary insurer has no responsibility for interest after paying the $1,000,000 liability limit.

Furthermore, under the excess policy, HIC must cover any professional liabilities, including interest, above the primary

policy's $1,000,000 limit. In that regard, the excess policy states that HIC will pay "all sums" which are in excess of that limit and which plaintiff "shall become legally obligated to pay as damages." And, although the excess policy does not specifically mention interest as a covered "sum" of "damages," that is of no moment because the excess policy does not limit the definition of "sums" to any particular category of damages or liability, or otherwise exclude interest from its reach.

In fact, given that the excess policy does not define "sums" at all, that contractual term logically acquires its widely used meaning of "indefinite or specified amount[s] of money" (Merriam-Webster's Collegiate Dictionary [11th ed 2003], sum; see *Travelers Cas. & Sur. Co. v Certain Underwriters at Lloyd's of London*, 96 NY2d 583, 594 [2001] [using common dictionary definition of a term in a reinsurance contract that was not otherwise defined in the contract]). Similarly, the parties evidently intended that "damages" would retain its most common meaning, namely "[t]he sum of money which the law awards or imposes as pecuniary compensation, recompense, or satisfaction for an injury done or a wrong sustained as a consequence either of a breach of a contractual obligation or a tortious act" (Ballentine's Law Dictionary [3d ed 2010], damages). By those definitions, interest included in any judgment against plaintiff constitutes a "sum" of money that is traceable to the judgment against him for "damages" in satisfaction of the wrong he caused to an injured party. Therefore, if that prejudgment interest is "in excess" of the primary policy's $1,000,000 liability limit, HIC must pay it. Indeed, even if there were any ambiguity as to whether the covered sums under the excess policy include interest, that ambiguity must be construed against HIC and in favor of plaintiff, thus providing coverage for that amount under the excess policy (see *Dean v Tower Ins. Co. of N.Y.*, 19 NY3d 704, 708 [2012]).

Applying the plain meaning of the primary and excess policies to the particular medical malpractice judgment against plaintiff at issue here, it is clear that the primary insurer's liquidator fulfilled its obligations under the primary policy, thereby triggering HIC's responsibility to pay the interest in excess of the primary policy's $1,000,000 liability limit. Upon entry of the initial judgment against plaintiff, the liquidator paid plaintiff $1,000,000 toward that judgment. At that point, the liquidator was no longer required to pay interest under the "supplementary payments" provision of the primary policy because that

further amount accrued only after the liquidator had already satisfied the liability limit of the primary policy in the manner specified by the "supplementary payments" provision. Thus, the additional interest on the judgment, as amended, constituted a "sum[ ] in excess of the limits of liability of the Underlying Policy," which is covered by the excess policy. Accordingly, HIC had to pay the additional interest.

Observing that, in the event of the primary insurer's insolvency, the excess policy expressly relieves HIC from any duty to "drop down" to cover any portion of the judgment that the primary insurer would be required to supply, HIC argues that plaintiff is improperly attempting to bypass that provision and force HIC to pay interest for which the primary insurer would be responsible had it not become insolvent. But, as explained, plaintiff does not impermissibly seek to have HIC "drop down" to fulfill any duty which otherwise would fall to the primary insurer if that insurer were still a going concern. Rather, if the primary insurer had remained solvent and paid the primary policy's $1,000,000 liability limit, HIC would still bear the responsibility for the remaining interest; that is simply its obligation under the plain language of the excess policy.

*Dingle v Prudential Prop. & Cas. Ins. Co.* (85 NY2d 657 [1995]) does not mandate a different result. *Dingle* involved an automobile insurance policy that covered the principal amount of any judgment against the insured driver up to the liability limit of the policy, and under the policy, the insurer additionally agreed to pay "all interest" that accrued between the date of the judgment against the insured driver and the date that the judgment was paid (*id.* at 659 n 1). The policy provision for postjudgment interest in excess of the liability limit was designed to comply with state regulations governing automobile insurance, which required insurers to pay postjudgment interest (*see id.* at 659-661; *see also* 11 NYCRR 60-1.1 [b]). After the plaintiff in *Dingle* prevailed in a bifurcated trial against the insured driver, the insurer paid its $100,000 policy limit toward the principal amount of the judgment, and it also paid postjudgment interest in proportion to its liability limit. However, the insurer refused to pay interest on the total amount of the judgment, and after the plaintiff sued the insurer, the trial court granted summary judgment to the insurer. We affirmed that grant of summary judgment, explaining that the courts' interpretation of insurance policies containing language similar to the policy acquired by the plaintiff, as well as the relevant state

regulations, compelled the insurer to pay interest only in proportion to the policy's limit of liability and not in relation to the entire judgment (*see Dingle*, 85 NY2d at 660-661).

Thus, *Dingle* stands for the proposition that an insurer generally does not assume responsibility for payments beyond its policy's liability limit, and that even when the relevant policy expressly covers interest above that limit in order to comply with state regulations, the policy still does not cover excess interest on the entire judgment against the insured.

Here, unlike the policy in *Dingle*, the primary policy does not expressly cover interest above the policy's liability limit, and the excess policy plainly covers "all sums" in excess of the primary policy's limit, necessarily including interest. Furthermore, in this case, there are no state regulations mandating that the primary insurer cover additional damages or interest beyond the primary policy's limit, nor do any regulations exempt HIC from its responsibility to pay all amounts in excess of the primary policy's limit.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order reversed, with costs, and case remitted to the Appellate Division, Second Department, for consideration of issues raised but not determined on the appeal to that court, in a memorandum.