# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 77
Jin Ming Chen,
  Appellant,
   v.
Insurance Company of the State of
Pennsylvania,
  Respondent.

Kenneth J. Gorman, for appellant.
Elizabeth F. Ahlstrand, for respondent.

DiFIORE, Chief Judge:

This appeal involves a dispute concerning an excess insurer's obligation to pay

interest on an underlying personal injury judgment after the primary policy was voided.

Like the courts below, we are unpersuaded by the injured plaintiff's argument that the

excess policy provided overlapping coverage for certain interest payments covered in the

primary policy, and we therefore affirm the Appellate Division order.

- 1 -

Plaintiff Jin Ming Chen was injured at a construction site and sued the general contractor Kam Cheung Construction, Inc. (Kam Cheung). At the time, Kam Cheung maintained both primary and excess liability insurance policies: a primary policy with a liability limit of $1 million per occurrence from Arch Specialty Insurance Company (Arch) and an excess policy with $4 million per occurrence in coverage from defendant Insurance Company of the State of Pennsylvania (ICSOP). In December 2011, Supreme Court granted partial summary judgment to plaintiff in that action, and, in October 2013, the court entered a personal injury judgment awarding plaintiff $2,330,000 plus $396,933.70 in prejudgment interest. During that time, Arch commenced a declaratory judgment action seeking rescission of the primary policy due to material misrepresentations made by Kam Cheung in its application, securing a judgment declaring that the Arch Policy was void ab initio. Thus, Arch provided no coverage relating to the personal injury judgment.

Plaintiff subsequently commenced this action against ICSOP, the excess insurer, asserting ICSOP was obligated to pay the entire underlying damages award. ICSOP answered, raising various defenses and contending it had validly disclaimed coverage. Plaintiff moved for summary judgment seeking a declaration that ICSOP's disclaimer of coverage was invalid and an order directing ICSOP to satisfy the underlying judgment. In opposition, ICSOP conceded both that its disclaimer of coverage was unenforceable due to its failure to serve plaintiff and that it was obligated to provide some coverage, but

argued that its policy did not "drop down" to fill the gap created by the voided Arch Policy.

After oral argument Supreme Court granted partial summary judgment to plaintiff, concluding that ICSOP was liable for a portion of the award but the excess policy did not "drop down" to cover the $1 million of liability coverage provided by the primary Arch Policy. Plaintiff then submitted a proposed judgment, which he calculated by taking the $2,726,993.70 personal injury judgment, adding post-judgment interest, and then subtracting $1 million representing the liability limit of the Arch Policy. In response, ICSOP moved for reargument, challenging the manner in which plaintiff had allocated interest payments, contending it was not obligated to cover interest that would have been paid by Arch had its policy not been voided.

After initially declining to address the interest issue, Supreme Court granted leave to reargue, permitting the parties to file briefs and participate in oral argument. ICSOP argued that plaintiff's proposed judgment was "inconsistent" with the court's prior holding that the excess policy did not "drop down" to subsume payments Arch would have paid, including the Arch Policy's coverage of the disputed interest. Plaintiff opposed, raising a series of procedural objections to the court's consideration of the issue and asserting, on the merits, that the ICSOP Policy covered loss in excess of $1 million— including all interest. After oral argument, Supreme Court rejected plaintiff's arguments and accepted ICSOP's proposed judgment, under which the excess insurer was obligated to pay the $1,330,000 in excess damages, prejudgment interest on those damages from

the date summary judgment was granted in the personal injury action, plus interest that

accrued from the date partial summary judgment was granted to plaintiff in this insurance

dispute until the entry of judgment.  ICSOP promptly paid the judgment.

On plaintiff's appeal, the Appellate Division affirmed (165 AD3d 588 [1st Dept

2018]).  After concluding that Supreme Court did not err in considering the interest

issue[1], the court rejected plaintiff's contention that ICSOP was required to cover all

interest under the policy's "follow form" provision, observing that the ICSOP Policy

covered only interest in excess of what would have been paid under the primary Arch

Policy's "Supplementary Payments" provision, which covered certain pre- and all post-

judgment interest.  We granted leave to appeal (33 NY3d 907 [2019]).

Insurance contracts are governed by the general rules of contract interpretation

(*see Burlington Ins. Co. v NYC Tr. Auth*, 29 NY3d 313, 321 [2017]).  When resolving

disputes concerning the scope of coverage, we look to the specific language in the

relevant insurance policies (*see Keyspan Gas E. Corp. v Munich Reins. Am., Inc.*, 31

NY3d 51, 60 [2018], citing *Roman Catholic Diocese of Brooklyn v National Union Fire*

*Ins. Co. of Pittsburgh, Pa.*, 21 NY3d 139, 148 [2013]; *see also State of New York v Home*

*Indem. Co.*, 66 NY2d 669, 671 [1985]).  As we have explained, "[i]t is axiomatic that a

---

[1] Supreme Court did not abuse its discretion when it permitted the parties to litigate the interest issue.  Given the way this litigation unfolded, the apportionment of interest did not come to the fore until plaintiff prepared a proposed judgment, at which time ICSOP promptly challenged plaintiff's interest allocation, and both parties had ample opportunity to brief and argue the issue prior to entry of judgment.

contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed" (*Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978] [quotation marks and citation omitted]).  The language of a policy, when clear and unambiguous, must be given its plain and ordinary meaning (*see United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [1986]).  On appeal in this Court, plaintiff argues that ICSOP was obligated to pay all prejudgment and postjudgment interest on the entire underlying personal injury award based on its "Ultimate Net Loss" provision, which plaintiff interprets as saddling ICSOP with all covered losses over the Arch Policy's $1 million liability limit.  Further, plaintiff contends that the excess insurer was obligated to pay all prejudgment and postjudgment interest on the underlying personal injury judgment (regardless of whether that interest would have been paid by Arch under the Arch Policy) pursuant to the "follow form" language in the excess policy, suggesting that ICSOP could avoid interest obligations only if it included language in the Ultimate Net Loss provision specifically addressing interest.  We reject both arguments.  Here, based on the unambiguous language of the two policies, the ICSOP Policy covered only losses in excess of those that would have been paid by Arch under the Arch Policy.

The parties agree that this dispute is governed exclusively by the language of the relevant insurance contracts.[2]  It is undisputed that the primary Arch Policy had a liability

---

[2] Judge Wilson's dissent is not confined to the parties' interest arguments but discusses common law, statutory, and public policy arguments regarding postjudgment interest, to which we "pay[] scant attention" (Wilson dissenting op at 11).  We focus only on the issue presented in this appeal—ICSOP's liability, if any, for interest under the language of the two insurance policies.  The other arguments addressed by Judge Wilson are

limit of $1 million per occurrence and, in addition, provided Supplementary Payments coverage that included "[p]rejudgment interest . . . on that part of the judgment we pay" and "[a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid."  Importantly, the policy expressly stated these Supplementary Payments (pre- and post-judgment interest) "will not reduce the limits of Insurance"—Arch's $1 million liability limit.  Thus, in the context of this case, the Arch Policy provided coverage for up to $1 million in damages plus certain interest in the form of "Supplementary Payments," even if those interest payments brought the total award over $1 million.

ICSOP's payment obligations are described in the excess policy's "Coverage" provision, which states that ICSOP will pay "Ultimate Net Loss in excess of the Underlying Insurance as shown in Item 4 of the Declarations."  "Ultimate Net Loss" is defined in that policy as "the amount payable in settlement of the liability of the Insured after making deductions for all recoveries and for other valid and collectible insurance, excepting however the Underlying Insurance shown in Item 4 of the Declarations."  In turn, Item 4 of the Declarations cites an attached "Schedule of Underlying Insurance," which references the Arch Policy generally (policy number, policy period, limits of insurance and type of coverage) without excluding any type of coverage provided therein (such as Supplementary Payments coverage).  Thus, based on the ICSOP Policy's

_____

neither preserved for review nor argued; the only relevant "policy" is the one reflected in the contracts.

Coverage and Ultimate Net Loss provisions, the excess policy covers only losses in excess of those that would have been paid by Arch under the Arch Policy. Accordingly, ICSOP is not obligated to pay the interest Arch agreed to pay as Supplementary Payments.

Two other provisions in the ICSOP policy support this result. First, a "Maintenance of Underlying Insurance" provision required that Kam Cheung maintain "[t]he limits of insurance of the Underlying Insurance"—here, the $1 million per occurrence liability limit—indicating that if Kam Cheung failed to comply, ICSOP would "only be liable to the same extent that [ICSOP] would had [Kam Cheung] fully complied." In contrast to the phrase "Underlying Insurance" used in the Coverage and Ultimate Net Loss provisions, the Maintenance of Underlying Insurance provision uses the more specific and limited reference to the Arch Policy's $1 million liability limit. This shows that the drafter knew how to isolate the Arch Policy's liability limit when it intended to reference only that aspect of coverage, using the broader term—Underlying Insurance—when referencing total coverage, including Supplementary Payments. As we have stated, "[t]he use of different terms in the same agreement . . . implies that they are to be afforded different meanings" (*see Platek v Town of Hamburg*, 24 NY3d 688, 696 [2015]). It is significant that ICSOP used the broader language in the Coverage and Ultimate Net Loss provisions, which define ICSOP's payment obligations, in a manner that excludes losses to be paid by Arch under the Arch Policy—including those addressed in the Arch Supplementary Payments provision.

Moreover, the Maintenance of Underlying Insurance provision clearly states that ICSOP's coverage would be unaffected by Kam Cheung's failure to maintain the required $1 million in primary liability coverage, which is effectively what occurred here. The ICSOP Policy's "Bankruptcy or Insolvency" condition further clarifies that, despite the "bankruptcy, insolvency, or inability to pay" of either Kam Cheung or Arch, ICSOP would not "drop down" and replace Arch or "assume any obligation within the Underlying Insurance area." Payment of some prejudgment and all postjudgment interest over the $1 million liability limit is an obligation "within the Underlying Insurance area."

Plaintiff effectively asks us to treat interest payments on the underlying award as falling within or reducing the Arch Policy's $1 million liability limit, which is contrary to the plain language of the Arch Supplementary Payments provision and the ICSOP Policy's Coverage, Ultimate Net Loss, and Maintenance of Underlying Insurance provisions. To do so would be inconsistent with the language chosen by the parties to the insurance contracts, rendering several clauses forceless—a result that should be avoided (*see Westview Assoc. v Guaranty Natl. Ins. Co.*, 95 NY2d 334, 339 [2000]). Arch agreed to expand its coverage of pre- and post-judgment interest beyond its liability limits, and ICSOP agreed to provide coverage only for losses in excess of Arch's coverage—including both the $1 million Arch policy limit and its Supplementary Payments.

Plaintiff's reliance on *Ragins v Hospitals Ins. Co., Inc.* (22 NY3d 1019 [2013]) is misplaced. In *Ragins*, the plaintiff sued collective excess insurers for unpaid interest on an underlying medical malpractice judgment after a liquidator paid out the primary

insurer's $1 million per occurrence limit. There, the primary policy's Supplementary Payments provision stated that the primary insurer would pay any "postjudgment interest only 'before' . . . it has 'paid . . . that part of the judgment which does not exceed the limit of the company's liability thereon'" (*id.* at 1021-1022). Thus, unlike the Arch Policy, the primary policy there did not expressly cover any interest that exceeded that policy's $1 million liability limit. Moreover, in *Ragins* (unlike this case) the excess policy covered "all sums" in excess of the primary policy's "*limits of liability*," which was $1 million (*id.* at 1023-1024 [emphasis added] [internal quotation marks omitted]). We held that the liquidator's payment of the $1 million fulfilled the insolvent primary insurer's obligations, and the excess insurer was liable to pay the rest, reasoning that the interest constituted a "sum" that was in excess of the primary policy limit and, thus, was covered by the excess policy (*id.* at 1022-1023). Although plaintiff would have us read into the ICSOP Policy's Coverage provision a similar reference to the Arch Policy's $1 million limit, the absence of such language in the contract before us is consequential. In fact, the coverage obligations in the primary and excess policies at issue in *Ragins* are distinguishable from the provisions interpreted here inasmuch as ICSOP agreed only to provide coverage in excess of the Arch Policy, including the interest covered under that policy's Supplementary Payments provision. Thus, that interest was appropriately excluded from the judgment entered in this case.

The inclusion in the ICSOP Policy of a standard "follow form" provision does not alter this result. Follow form policies allow an insured that deals with multiple "insurers for the same risk to obtain uniform coverage, and to know, without a minute policy-by-

policy analysis, the nature and extent of that coverage" (*Union Carbide Corp. v Affiliated FM Ins. Co.*, 16 NY3d 419, 424 [2011]).  In other words, if the underlying policy covers certain conduct, the excess policy does as well (*see Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642, 646 [2012]).  However, a general "follow form" provision does not override the express payment terms set forth in the excess policy that define the limits of excess coverage.[3]  By its terms, the ICSOP Policy did not drop down in the event Arch failed to satisfy its obligations; it existed to cover losses in excess of those covered by the Arch Policy, up to ICSOP's $4 million limits of liability.  The fact that the Arch Policy was voided does not warrant a different reading of the plain language of the two policies, although it unfortunately resulted in a coverage gap that included both the $1 million liability limit of the Arch Policy and certain interest covered in the Arch Supplementary Payments provision.  Notably, however, the tortfeasor, Kam Cheung, remains liable for this component of the loss, which is appropriate given that the tortfeasor's own misrepresentations caused the gap in coverage (*see Keyspan*, 31 NY3d at 63).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

---

[3] Judge Fahey's "joint and several liability" analysis is simply inconsistent with the ICSOP Policy's payment terms, which expressly exclude losses "within the Underlying Insurance area" (including the Arch Supplementary Payments).  That the ICSOP Policy follows-form to the nonconflicting terms of the Arch Policy does not make ICSOP jointly and severally liable for payments it excluded.

FAHEY, J. (dissenting):

I join Judge Wilson's dissent, save for its conclusion with respect to the allocation of responsibility for post-judgment interest. In my view, Insurance Company of the State of Pennsylvania (ICSAP) is responsible for paying *all* post-judgment interest with respect to the award in the underlying action based on a combined reading of the excess and

primary policies.  This conclusion is based on a single analysis that, given the complicated nature of this dispute, is best explained in two parts.

I.

The fundamental and usual principles of law that guide our review of the post-judgment interest question are clear.  We first inspect the language of the policy.  In doing so we give unambiguous provisions their plain and ordinary meaning (*see Lend Lease [US] Constr. LMB v Zurich Am. Ins. Co.*, 28 NY3d 675, 682 [2017]) and interpret the contract "according to common speech and consistent with the reasonable expectation of the average insured" (*Matter of Viking Pump, Inc.*, 27 NY3d 244, 257 [2016] [internal quotation marks omitted]).  Ambiguous provisions—those that may be reasonably interpreted in two conflicting manners—must be construed in favor of the insured and against the insurer (*see Lend Lease [US] Constr. LMB*, 28 NY3d at 682; *see also White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]; *Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 3216 [1996]).

Turning to the excess policy, it contains a "follow the form" clause providing that "the coverage [afforded] by [the excess] policy shall follow the terms, definitions, conditions, and exclusions of the [primary policy]."[1]  In the primary policy is a supplementary payment provision, through which the primary insurer, Arch Specialty

---

[1]     Excess policies may provide coverage pursuant to what is commonly referred to as a "following" certificate or policy.  Under such a provision, the excess insurer provides coverage subject to exactly the same terms and conditions as those of the underlying insurance (*see* 1 New Appleman New York Insurance Law § 16.04; *see also Viking Pump., Inc.*, 27 NY3d 244, 252-253 [2016]).

Insurance Company (Arch), agreed to cover "*[a]ll interest* on the *full amount of any judgment* that accrues after the entry of the judgment and before [the insurer] paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance" (emphases added).

Applying the usual rules of insurance policy interpretation, we should conclude that the "all interest" and "full amount" language would render the primary insurer responsible for *all* post-judgment interest accruing before that carrier paid the part of the judgment for which it was responsible. That is, had the primary policy been operable at the time of the underlying loss,[2] the primary insurer would have been responsible for *all* post-judgment interest that accrued before that carrier paid its share of the judgment. Similarly, through the "follow the form" provision in the policy that it issued, the excess carrier (ICSOP) stepped into the shoes of the primary insurer and likewise assumed responsibility for *all* post-judgment interest that accrued before ICSOP paid the part of the judgment for which it was responsible.

Said differently, although they assumed different layers of risk, each carrier agreed that, to the extent it was responsible for *part* of a judgment against the insured, it would become responsible for *all* post judgment interest on the *entirety* of the judgment until it satisfied the part of the judgment for which it was responsible. The post-judgment interest scenario that the insurers created is similar to the rule of joint and several liability in tort

---

[2]     That policy was rescinded during the pendency of the underlying personal injury action due to material misrepresentations made by the insured in applying for that coverage.

cases: each carrier is responsible not only for the share of post-judgment interest pertinent to the part of the judgment for which it is responsible, but also for the share of post-judgment interest attributable to the part of the judgment the carrier has no obligation to pay.

## II.

Absent from that review is treatment of the majority's misstep in its resolution of the post-judgment interest question. That analysis requires a lengthier and more complex discussion of the subject policies that sometimes overlaps with the concise account of the allocation of post-judgment interest responsibilities in the first section of this writing.

The majority concludes that, "based on the unambiguous language of the two policies, [ICSOP, through the excess policy,] covered only losses in excess of those that would have been paid by Arch under the [primary] policy" (majority op at 5). Flowing from that conclusion is the majority's belief that, because post-judgment interest is a "loss" within the meaning of the policies, and because Arch "agreed to pay [post-judgment interest] as Supplementary Payments" (majority op at 7), ICSOP, as the excess carrier, has no responsibility to "drop down" to assume that obligation in the absence of an operative primary policy (majority op at 10).

My analysis of the post-judgment interest question, however, begins not with the supplementary payments provision of the primary policy, but with the excess contract. As relevant here, the excess policy binds ICSOP to

> "pay on [the] behalf [of the named insured] the Ultimate Net
> Loss in excess of the Underlying Insurance as shown in Item 4
> of the Declarations, but only up to an amount not exceeding

[ICSOP's] Limits of Insurance as shown in Item 3 of the Declarations. Except for the terms, definitions, conditions and exclusions of [the excess] policy, the coverage provided by [that] policy shall follow the terms, definitions, conditions and exclusions of the [primary policy]."

That language, to this point, refers to a $4 million limit of insurance in the excess policy (Item 3 of the Declarations), as well as the underlying primary policy of insurance (providing $1 million in coverage, issued by and later rescinded by Arch, and referred to in Item 4 of the Declarations). That language also refers to the phrase "Ultimate Net Loss," which the excess policy defines as meaning

"The amount payable in settlement of the liability of the insured after making deductions for all recoveries and for other valid and collectible insurance, excepting however the Underlying Insurance shown in Item 4 of the Declarations."

Important to our review is the point that the "Ultimate Net Loss" clause provides that the amount payable in settlement of the liability of the insured "except[s] . . . the Underlying Insurance." The "Underlying Insurance," of course, is the primary insurance here in question. Inasmuch as the "Ultimate Net Loss" provision contains an offset for the coverage provided by the primary policy, even if that primary policy is deemed invalid and not collectible, the majority essentially concludes that ICSOP can have no liability for post-judgment interest because the primary policy obliged Arch to pay such monies (*see* majority op at 6).[3]

---

[3]     The part of the primary policy providing for the payment of post-judgment interest has not, to this point, been quoted in Section II of this writing. This part of the analysis presumes—safely—that the primary insurer must pay post-judgment interest.

Also relevant to this analysis is the maintenance provision of the excess policy, under which

> "[t]he limits of insurance of the Underlying Insurance shown in Item 4 of the Declarations shall be maintained in full effect during the period of this policy except for any reduction or exhaustion of aggregate limits contained therein solely by the payment for damages for accidents or occurrences, whichever is applicable, that take place during each annual period of this policy and that are insured by this policy."

To that point, the maintenance provision is relatively unremarkable. That clause, however, also provides that:

> "If you [(the insured)] fail to comply with this [maintenance] requirement], we [(the insurer)] will only be liable to the same extent that we would had you fully complied with this requirement."

The maintenance provision, ISCOP believes (and the majority agrees [*see* majority op at 7-8]), supports its view that it has no obligation for post-judgment interest. As the theory goes, because the primary policy rendered Arch responsible for post-judgment interest, because the 'Ultimate Net Loss" provision of the excess policy allows the excess carrier to offset post-judgment interest allocable to the primary carrier, and because the maintenance provision of the excess policy does not allow an obligation of the primary carrier to be shifted to the excess carrier where the primary policy is rescinded, ISCOP has no obligation with respect to post-judgment interest.

That conclusion, however, ignores the point that the primary insurer's responsibility for post-judgment interest is neither singular nor comprehensive, and instead is shared with an excess carrier that adopts the terms and conditions of the primary policy.

The supplementary payments provision of the primary policy provides that, with respect to post-judgment interest,

> "[w]e [(the insurer)] will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend . . . [a]ll interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in our the part of the judgment that is within the applicable limit of insurance."

To be sure, that clause burdens the primary carrier with responsibility for *all* post-judgment interest that accrues before that carrier pays its share of a judgment. That is, here, until Arch (assuming its primary coverage here was operable at the time of the underlying incident) paid the $1 million in damages protection owed under the primary policy, it would be responsible for post-judgment interest accruing with respect to the *entirety* of the approximately $2.3 million judgment.

Nothing in that language, however, places that responsibility exclusively with the primary insurer. Indeed, the excess policy contains a "follow the form" clause that incorporates the terms and conditions of the primary policy into the excess agreement, except as noted in that contract. Although the excess policy exempts from coverage risk accepted and protected by the primary policy, responsibility for post-judgment interest does not rest solely with the primary insurer. Under the plain terms of the supplementary payments provision of the primary policy, by which ICSOP's responsibilities are governed, post-judgment interest is treated similarly to joint and several liability; to the extent a carrier is responsible for *part of the judgment*, it is responsible for *all post-judgment interest*

on the *entirety of the judgment* until it has satisfied the portion of the judgment for which it is responsible.[4]

That conclusion—which suggests that the allocation of responsibility for post-judgment analysis is the functional equivalent of joint and several liability thereby rendering ICSOP, as the excess carrier, responsible for the entirety of the post-judgment interest assessment here—admittedly presents one potential problem. Absent an effective policy of primary insurance, it is impossible to determine whether and when Arch would have paid its $1 million share of the underlying judgment (and therefore terminated its responsibility for post-judgment interest). To the extent Arch immediately paid that judgment, ICSOP's responsibility for post-judgment interest would be confined to the amount accruing on its approximately $1.3 million share of the judgment.

However, that is not what happened. Ultimately, the point remains that the policy language requires that ICSOP bear responsibility for *all* post-judgment interest in the scenario presented. At bottom, according to the primary policy, every carrier on the risk with respect to post-judgment interest is to be treated equally. In the absence of language establishing an exclusive primary responsibility for that risk item, and because the excess carrier is unquestionably responsible for post-judgment interest on the $1.3 million share of the judgment in the underlying action until that judgment is paid by the excess carrier, we are left with only one logical conclusion. Namely, we should conclude that ICSOP (as

---

[4] As a practical matter, that policy design incentivizes prompt payment of judgments owed by the respective carriers, and should operate to discourage the delay in payment that occurred with respect to the amounts owed relative to the underlying action.

the excess carrier) has a mutual responsibility for post-judgment interest and that, because Arch has not paid on what would have been its $1 million share of the underlying judgment, such interest duty covers the *entirety* of the $2.3 million of the underlying judgment, without an offset or multi-policy sharing.  At worst (from the perspective of the insured), the interplay of the parts of the primary and excess policies considering the post-judgment interest question yields an ambiguity with respect to the extent of protection owed by ICSOP that is to be resolved in favor of coverage (*see generally Lend Lease [US] Constr., LMB Inc.*, 28 NY3d at 681-682).

WILSON, J. (dissenting):

The facts of this case are very odd, which perhaps has led the majority to misinterpret the contracts at issue. The story begins ordinarily: Kam Cheung Construction, Inc. ("Kam Cheung") purchased a $1 million primary insurance policy from Arch Specialty

Insurance Company ("Arch") and a second "follow-form" $4 million excess policy from the Insurance Company of the State of Pennsylvania ("ICSOP"). Mr. Chen was injured in a construction accident and sued Kam Cheung. Arch, the primary insurer, defended Kam Cheung for a time.

The next events are less usual: Kam Cheung failed to notify ICSOP of the lawsuit until 15 months after it had been commenced. ICSOP sent a letter to Kam Cheung disclaiming coverage on that basis, but neglected to notify Mr. Chen of its disclaimer. Not until six months later, as a result of discovery, did Mr. Chen learn of the existence of the ICSOP policy; a few days later, Mr. Chen sent a notice of claim and request for defense to ICSOP. ICSOP promptly informed Mr. Chen that it had disclaimed coverage based on Kam Cheung's late notice and refused to assume the defense or pay any judgment. About a year later, Supreme Court granted partial summary judgment (on liability) in favor of Mr. Chen, leaving damages to be determined.

The remaining facts are highly unusual. With determination of damages still pending, Supreme Court granted Arch a declaration that its policy with Kam Cheung was "void *ab initio*" because Kam Cheung had made material misrepresentations. As a consequence, on September 11, 2012, Supreme Court granted Arch's motion to withdraw from the further representation of Kam Cheung. Six months later, that order was affirmed on appeal. Thereafter, as a result of the now-unrepresented Kam Cheung's failure to appear for several compliance conferences, Supreme Court entered an order of default, held an inquest on damages, and awarded Mr. Chen damages of $2,330,000 plus costs, prejudgment interest and disbursements. On October 29, 2013 (six years after Mr. Chen's

injury), judgment was entered in the amount of $2,726,993.70. Mr. Chen immediately served a copy of the judgment on Kam Cheung and ICSOP. Kam Cheung, apparently defunct, did not respond.

When neither Kam Cheung nor ICSOP paid the judgment, Mr. Chen commenced the instant lawsuit against ICSOP, demanding that ICSOP pay the full $2,726,993.70 judgment and postjudgment interest on that amount running from the date of judgment. In May of 2016, Supreme Court rejected ICSOP's several attempts to disclaim coverage, held that ICSOP's policy did not cover the "first million dollars" and held that ICSOP should satisfy "the balance of the judgment." After Mr. Chen submitted a proposed judgment that included all of the outstanding pre- and post-judgment interest, ICSOP moved to resettle the judgment or, in the alternative, reargue the apportionment of interest. In Supreme Court, ICSOP argued as follows:

> "ICSOP is only liable for $1,330,000 together with any pre-judgment interest accrued on that sum. Alternatively, ICSOP is liable, at most, for $1,330,000 together with any pre[-] and post-judgment interest accruing on that amount. Under no circumstances is ICSOP . . . liable for the first $1,000,000 of the underlying damages award or any pre[-] or post-judgment interest accrued on that first $1,000,000."

After reargument, Supreme Court clarified its judgment to provide that ICSOP owed its share of prejudgment interest but no postjudgment interest, selecting one of ICSOP's two alternatives and rejecting the other.

The Appellate Division upheld the amended judgment and the majority affirms, based on a reading of the contracts to which I do not subscribe. The basic architecture of the policies establishes that after Supreme Court held the primary policy was void *ab initio*

and determined that ICSOP could not disclaim coverage, ICSOP became liable for its share of postjudgment interest.

Arch's primary policy committed Arch to: (1) defend Kam Cheung in any suit arising out of the policy, (2) pay prejudgment interest on its part of any judgment, and (3) pay all postjudgment interest that accrued "after entry of judgment and before [it had] paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance."  Those supplementary payments extended only to any claim that "we investigate or settle, or any 'suit' against an insured we defend."

ICSOP's excess policy "followed form" from Arch's policy, meaning that it incorporated the provisions of Arch's policy "[e]xcept for the terms, definitions, conditions and exclusions of this policy."  Among those terms and exclusions was a provision entitled "Bankruptcy or Insolvency" that stated:

> "Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.
>
> But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Underlying Insurance or assume any obligation within the Underlying Insurance area."

The two policies are interlocking and together establish several clear propositions. Arch would pay the first $1 million of any judgment; ICSOP would pay the excess (up to $4 million).  The two insurers would share responsibility for prejudgment interest: Arch would cover prejudgment interest on the first $1 million; ICSOP would cover the excess

(again, up to $4 million). For that reason, I join the majority's holding insofar as it properly apportions prejudgment interest between the two insurers.[1]

Postjudgment interest was treated differently. Because Arch, as primary insurer, had the initial duty to defend the insured, Arch assumed liability for all postjudgment interest, which, by definition, could only accrue during and after litigation that Arch was obligated to participate in. Absent some contractual protection, Arch's promise to assume liability for all postjudgment interest was potentially enormous. (For example, if Kam Cheung's building had collapsed and injured dozens of neighbors, Arch's liability for postjudgment interest could fast eclipse its principal liability of $1 million). As a result, Arch's policy contains two essential protections. Arch's liability for postjudgment interest extended only to "any claim we investigate or settle, or any 'suit' against an insured we defend," and Arch could terminate its liability for postjudgment interest at any moment by paying or offering to pay its portion of the underlying judgment. Those protections depended upon Arch's involvement in the litigation.

Neither the primary policy nor the excess policy addressed a separate question: what would happen if Arch disengaged from the litigation, not because Arch paid its portion of the underlying judgment, but instead because Arch's policy was judicially determined to be void *ab initio*? Who then would be responsible for postjudgment interest?

---

[1] I also agree with the majority as to the propriety of Supreme Court's decision to permit the parties to submit additional briefs and present argument specifically directed to the issue of interest (majority op at 4 n 1).

Once Supreme Court held that Arch's contract of insurance with Kam Cheung was void and excused Arch from the litigation, there is no basis to claim that liability for ICSOP's portion of postjudgment interest continued to rest with Arch. Contractually, Arch's obligation to pay postjudgment interest was conditioned upon its participation in the litigation. After Arch withdrew, that fundamental precondition of the entire arrangement was no longer met.

There is also no basis to claim that the postjudgment liability thereafter rested with Kam Cheung—at least not once Supreme Court determined that ICSOP could not disclaim coverage. The structure of the policies establishes that responsibility for postjudgment interest, after the primary insurer withdrew, fell to the other insurers in proportion to their underlying liability. ICSOP committed to pay all of Kam Cheung's liabilities under the policy except those "within the Underlying Insurance area." Postjudgment interest was a responsibility that shifted from primary to excess insurer once the primary insurer paid its portion of the judgment. However, that obligation was contingent upon the primary insurer's participation in the litigation, and once Supreme Court granted Arch's motion to withdraw from the litigation, the obligation for postjudgment interest (accruing on another insurer's liability) no longer constituted an "obligation within the Underlying Insurance area." Therefore, Arch's promise to pay postjudgment interest no longer fell within the express exemptions and fell instead to ICSOP.

That contractual reading is further supported by the basic purpose of postjudgment interest and the mechanisms by which it accrues. Pre- and post-judgment interest both represent the time value of money that the insured (or the insurance company) has gained

and the injured party has lost (*see generally* 44B Am Jur 2d Interest and Usury § 28). However, there are differences between the two forms of interest. Prejudgment interest can begin to run before the insured or insurance company has investigated the claim. As a result, Arch prudently capped its liability for prejudgment interest to its portion of the judgment. In contrast, postjudgment interest accumulates as a result of the defendant's strategic decision to contest the underlying judgment. Where an insurer is responsible for the defense, the insurer must evaluate the chance of postjudgment success (*e.g.*, appeals) and the time likely to be taken, and weigh that expected value against the time value of money represented by the statutory postjudgment interest rate, here 9% annually (*see* CPLR 5004). Put simply, when a defendant loses a claim, its insurer can pay up immediately, or can bet on a reversal, the cost of which is postjudgment interest the insurer will have to pay if it bets wrong.

Since October of 2013, ICSOP has been the sole litigant contesting responsibility for its portion of the judgment. ICSOP received repeated notice of the ongoing litigation between Mr. Chen and Kam Cheung, including on the day the judgment was entered, now more than seven years ago.[2] At that point, ICSOP could have tendered the $1.33 million it owed and thereby shut off the accrual of postjudgment interest on its liability. Instead, ICSOP made a different strategic decision; it fought the judgment in its entirety, arguing for years that it had disclaimed coverage and that, even if its disclaimer was invalid, Mr.

---

[2] Kam Cheung notified ICSOP in May of 2009, Mr. Chen notified ICSOP directly on January 4, 2010, and Mr. Chen again notified ICSOP on October 29, 2013.

Chen's particular injury was not covered by the excess policy.[3]  Arch had nothing to do

with that decision—the court excused it.  Kam Cheung had nothing to do with that decision

—it was nowhere to be found.  After three and a half years of litigation, Supreme Court

ruled against ICSOP, holding that its initial disclaimer was invalid and that its subsequent

defenses were untimely.  In the interim, ICSOP gained—and Mr. Chen lost—the time value

of money ICSOP owed to Mr. Chen.

Under the terms of the two policies, ICSOP should not have expected that any other

party would foot the bill for the interest that accrued solely as the result of its own litigation

decisions.  The structure of the policy made clear that the primary insurer's obligation to

pay postjudgment interest was conditioned on its involvement in the litigation.  Neither the

primary insurer (whose policy was voided) nor Kam Cheung (who defaulted) have been

responsible for any postjudgment litigation decisions.

If this were a dispute over a regular contract, its resolution would not pose much

difficulty once the unusual facts have been ordered properly.  The structure and purpose of

the agreement are clear and the language requires excess insurers to pay postjudgment

interest when the primary insurer has no coverage obligation.  Because it is a dispute over

an *insurance* contract, this case is even simpler.  We have repeatedly explained that "before

---

[3]  In its opposition to the Plaintiff's motion for summary judgment, ICSOP argued that Mr. Chen had been an employee of Kam Cheung's, and therefore Mr. Chen's injury fell within the excess policy's exclusion for employer liability.  In its order granting summary judgment, Supreme Court rejected ICSOP's employer liability exclusion defense on the grounds that (1) no findings had been made that Mr. Chen was an employee of Kam Cheung, and (2) that defense, which came four years after ICSOP originally disclaimed coverage, was untimely.

an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to *no other reasonable interpretation*" (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984] [emphasis added] [citations omitted]; *accord Dean v Tower Ins. Co. of New York*, 19 NY3d 704, 708 [2012]). The above interpretation is, at the very least, a reasonable interpretation of interdependent agreements that obligate ICSOP to pay postjudgment interest on its portion of the judgment once it was responsible for, and actually exercised, control of Kam Cheung's defense. Therefore, we are obliged to construe the policies against ICSOP and in favor of providing coverage.

Furthermore, ICSOP's strained reading of the underlying policy contradicts the express obligations set forth in the excess policy. The insolvency provision of the excess policy provision states:

> "Your . . . inability to pay or the . . . inability to pay of any of
> your underlying insurers will not relieve us from the payment
> of any claim covered by this policy."

Despite the plain language of that provision, ICSOP now contends that its liability for postjudgment interest does in fact depend upon the ability to pay of either the primary insurer or the insured. Under ICSOP's new theory, if neither pays, ICSOP will never be liable for postjudgment interest. Invoking the above contractual provision, ICSOP argued to Supreme Court that the fact "[t]hat Kam Cheung cannot meet its obligations is of no effect." Now, conversely, ICSOP contends that either Arch or Kam Cheung would have had to "tender[] payment of the $1,000,000 primary limits [to] cut off Arch's obligation under the Arch Policy to pay all postjudgment interest." That theory of when the meter

begins to run on ICSOP's postjudgment interest flatly contradicts the insolvency provision, which states that payment of ICSOP's claims is not contingent on the underlying insurer's or the insured's ability to pay.

To be clear, however, I would hold that ICSOP is liable for postjudgment interest on its portion of the underlying judgment only—not on the $1 million of the underlying judgment as to which it had no liability. I agree that, under the terms of the policies, Arch committed to pay both the $1 million policy limit and any attendant interest on that $1 million. However, because Arch's commitment to pay postjudgment interest on another insurer's judgment liability was conditional on its own involvement in the litigation, that obligation was extinguished when the policy was voided and Arch withdrew from the litigation.[4]

---

[4] Judge Fahey reaches a different conclusion based on an alternative reading of the policies that is reasonable. Under that interpretation, the primary and the excess insurers are jointly liable for all postjudgment interest because the follow-form excess policy incorporates the primary's postjudgment interest provision into its policy. That joint liability extends until either insurer tenders its portion of the underlying judgment, which ICSOP did not do until years after the judgment was entered. For the reasons explained herein, I believe my interpretation of the excess coverage policy's allocation of responsibility for postjudgment interest best comports with our cardinal rule of effectuating the parties' intent (*see Evans v Famous Music Corp.*, 1 NY3d 452, 458 [2004] ["It is well settled that our role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract"]; *see also Greenfield v Philles Records, Inc.*, 98 NY2d 562, 569 [2002]). Judge Fahey's interpretation, however, should be preferred over the majority's. Under our canon of construction for situations in which an insurance agreement is subject to multiple reasonable interpretations, the reasonable construction most favorable to the insured prevails (*see Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [1984]). The majority's choice of the interpretation least favorable to the insured does not comport with our longstanding precedent.

The majority pays scant attention to the differences between pre- and post-judgment interest and omits any discussion of the policy's logic in tying postjudgment interest to control of the litigation. In so doing, the majority overlooks the more compelling (or at minimum, a reasonable) interpretation of the two policies that should lead us to conclude that ICSOP was responsible for the postjudgment interest on its portion of the underlying judgment.[5] The majority's parting line, that Mr. Chen can pursue postjudgment interest against Kam Cheung, is belied by ICSOP's acknowledgement that "Kam Cheung cannot meet its obligations." Indeed, that is why most insurance policies are purchased: to cover risks that the insured cannot afford to pay. It is also why New York City requires contractors like Kam Cheung to purchase accident insurance as a condition of doing business: so that innocent victims such as Mr. Chen do not suffer because the liable party is unable to satisfy the judgment (*see generally* 1 RCNY § 101-08). In any event, under the terms of the policies, Kam Cheung is not the party responsible for postjudgment interest that ICSOP racked up when neither Arch nor Kam Cheung were involved in the litigation.

Although the facts and procedural history are peculiar, the insurance contracts are standard form contracts. Much as I disagree with the majority's interpretation of these contracts as applied to the facts here, one should not assume it has much, if any, relevance to cases with more conventional facts—for example, where the primary insurer is insolvent

---

[5] The majority's curious footnoted response to my dissent erroneously claims that the parties did not preserve a claim that the policy should be interpreted to render ICSOP liable for postjudgment interest on its share of the award only (*see supra* at 3) and confuses my use of the phrase "policy's logic" in the first sentence of this paragraph to have something to do with public policy, when all I mean is the logic—*i.e.*, the structure and interrelationships—within the four corners of the *insurance policy*.

and the defense is assumed start to finish by the excess carrier.  Likewise, it would be wildly inconsistent with the contractual provisions and public policy to interpret the majority's position as holding that once a primary carrier has dropped out without paying its policy limit, excess carriers have a free ticket to prolong postjudgment litigation at the expense of the injured party (*see Denio v State*, 7 NY3d 159, 166 [2006] [explaining the salutary role that postjudgment interest plays in inducing parties to negotiate and settle claims]).

Frequently, as happened here, injured parties like Mr. Chen will be left bearing the costs of an insurer's strategic decision to refuse to pay what it owes.  All of this could be avoided if the policies were read as they can be reasonably interpreted; as linking liability for postjudgment interest to control of the litigation, a control which ICSOP undeniably had.

Order affirmed, with costs.  Opinion by Chief Judge DiFiore.  Judges Rivera, Stein, Garcia and Feinman concur.  Judge Fahey dissents in an opinion.  Judge Wilson dissents in a separate dissenting opinion.

Decided November 24, 2020